In re FRANKLIN BLDG. CO.
SIMONSEN v. EMMERLING.
EMMERLING v. SCHROEDER.
EMMERLING v. SCHROEDER et al.
Nos. 9842–9844.

United States Court of Appeals
Seventh Circuit.
Dec. 8, 1949.
Rehearing Denied Jan. 16, 1950.

David Ferber, Special Counsel, Washington, D. C., Thomas B. Hart, J. Kirk Windle, Leo J. Powers, Chicago, Ill., Roger S. Foster, Washington, D. C., and W. Victor Rodin, Philadelphia, Pa., for Security and Exchange Commission.

A. L. Skolnik, Milwaukee, Wis., and Louis C. Ritter, Milwaukee, Wis., for Simonsen.

John W. Emmerling, Milwaukee, Wis., pro se.

Ralph M. Hoyt, Milwaukee, Wis., for Schroeder and another.

Before KERNER, FINNEGAN, and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

On May 5, 1947, the Corporate Debtor filed its petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., and the petition was approved by the Court. John W. Emmerling was appointed and qualified as trustee.

Claims based on first mortgage bonds of the corporate debtor were filed by Lena Simonsen, Robert W. Schroeder, Mollie Schroeder and June Kuptz, and many others who are not concerned in these appeals. The trustee filed objections to the claims of these above-named persons on the ground that they were either fiduciaries or associated with fiduciaries, and that their respective claims should therefore be allowed only in the amount that the bonds had actually cost them.

The appeals were considered and argued together, the Securities Exchange Commission has filed briefs in support of the position taken by the trustee for the corporate debtor.

The Franklin Building Company was organized in 1929, and it erected a five-story building in Milwaukee. It executed a first mortgage to secure 6½% bonds in the sum of Two Hundred and Fifty Thousand ($250,000) Dollars. There was also a second mortgage to secure 7½% bonds in the sum of Sixty Thousand ($60,000) Dollars. Interest payments on the mortgages were not made when due, consequently a first mortgage Bondholders' Committee was formed in September, 1932. The management and control of the building was placed in a trustee chosen by the Bondholders' Committee. One Marty was chosen as manager of the building and acted as such from 1932 until 1937, when William A. Schroeder was chosen by the Committee to act in that capacity.

William Simonsen, husband of the appellant in case No. 9842, was a member of the Bondholders' Committee from 1935 until his death on November 14, 1944. During the period from February 9, 1937 to May 1, 1942, he purchased Eleven Thousand Five Hundred ($11,500) Dollars in first mortgage bonds, and paid therefor only Four Thousand Three Hundred Sixty-Seven and fifty/100 ($4367.50) Dollars. On his death his widow, appellant Lena Simonsen, received these bonds.

It appeared on the hearing that Three Thousand Five Hundred ($3500) Dollars in principal amount of the Simonsen bonds were acquired at the time of the original issue, and Eight Thousand ($8000) Dollars in principal amount were acquired while her husband was a member of the Bondholders' Committee at prices ranging from 9½ to 15 cents on the dollar.

The claim of Lena Simonsen was allowed in the sum of Four Thousand Three Hundred Seventy-One and Seventy-One/100 ($4371.71) Dollars only with the proviso that as to the bonds in the principal sum of Thirty-Five Hundred ($3500) Dollars purchased at the time of original issue,

the allowance should also include distribution of funds, over and above the principal amount, available for distribution on account of accrued interest. On the remaining Eight Thousand ($8000) Dollars in principal amount she was allowed only Eight Hundred Seventy-One and Seventy-One/100 ($871.71) Dollars without interest. She appeals in Case No. 9842, from that order.

William A. Schroeder was a stockholder, director and officer of the Franklin Building Company. He was managing agent of the property from 1929 to 1932. He was again appointed managing agent in 1937 and so remained until 1947. He was a member of the Bondholders' Committee from November 1944 until May 14, 1947. He purchased bonds in the principal amount of Forty-Five Hundred ($4500) Dollars from September 1946 to May 14, 1947 for which he paid only Twenty-Two Hundred and Ten ($2210) Dollars. He was also a claimant in these proceedings, but his claim was confined to the cost of his bonds Twenty-Two Hundred and Ten ($2210) Dollars without interest. He has not appealed.

Mollie Schroeder, appellee in Case No. 9844, is the wife of William A. Schroeder. From January 1941 to March 1947, there were purchased on her behalf bonds to the principal amount of Ten Thousand ($10,000) Dollars. The purchase price was only Three Thousand Seven Hundred Eighty ($3780) Dollars. Of these bonds Seven Thousand ($7,000) Dollars in principal were purchased while her husband was a stockholder, director and officer of the corporate debtor, and a member of the Bondholders' Committee. Three Thousand ($3,000) Dollars in principal amount were purchased before he became a member of the Bondholders' Committee. Her claim was allowed in full as filed, that is for Ten Thousand ($10,000) Dollars, and the trustee for the corporate debtor appeals from that order, Cause No. 9844.

June Kuptz, also an appellee in Case No. 9844, is the daughter of William A. Schroeder and while her father was a member of the Bondholders' Committee, from May 1946 to April 1947, she purchased first mortgage bonds in the principal amount of Forty-Five Hundred ($4500) Dollars; for these bonds she paid only Twenty-Two Hundred Seventy ($2270) Dollars. Her claim, like her mother's, was allowed in full as filed, that is for Forty-Five Hundred ($4500) Dollars. The trustee for the corporate debtor also appeals from that order in Case No. 9844.

Robert W. Schroeder is the son of William Schroeder. He was a member of the Bondholders' Committee from May 14, 1947 to the date of hearing, January 4, 1949. Before becoming a member of the Committee, from June 1942 to May 3, 1946 he purchased Eighty-Three Hundred ($8300) Dollars worth of bonds for which he paid only Thirty-Four Hundred Ninety-Four ($3494) Dollars, and he also purchased Twenty-One Hundred ($2100) Dollars worth in bonds for an unknown amount, the purchase records having been lost. He bought no bonds after he became a member of the Bondholders' Committee. His claim was likewise allowed in full, and the trustee for the corporation again appeals from the order of allowance, Case No. 9843.

Section 212 of the Bankruptcy Act, Title 11 U.S.C.A. § 612, provides: "The judge * * * may limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding under this chapter to the actual consideration paid therefor."

In support of his contention that members of the Bondholders' Committee were fiduciaries and were therefore precluded from purchasing claims against an insolvent estate, the trustee relies on Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281; In re Van Sweringen Co., 6 Cir., 119 F.2d 231, and In re Norcor Mfg. Co., 7 Cir., 109 F.2d 407. Lena Simonsen, of course, as to the bonds in the principal sum of Eight Thousand ($8000) Dollars purchased by her husband while he was a member of the Committee, stands in his place.

It is abundantly clear from this record that the Bondholders' Committee,

including William Simonsen strove valiantly to convince owners of the bonds that they should retain them, and that in many cases purchased such bonds from brokers to protect themselves and their co-owners for whom they were acting, from the possibility of the bonds getting into unfriendly hands. Nevertheless the rule is absolute. A trustee can make no profit out of his trust. We are therefore of the opinion that the trial court properly limited the claim of Lena Simonsen to Forty Three Hundred Seventy-One and Seven-One/100 ($4371.71) Dollars. Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151.

The same reasoning does not apply to the claims of Mollie Schroeder and June Kuptz. They were not in any fiduciary relationship with other bondowners. Their bonds were purchased in their own names and with their own funds. Not an iota of evidence in this record tends to show that they were acting on behalf of their father or any other member of the Bondholders' Committee.

In the Lorraine Castle Apartments Bldg. Corp., Inc., 7 Cir., 149 F.2d 55–57, this court held that Section 212 of the Bankruptcy Act did not apply to third parties who were under no fiduciary obligations. It is true that case did not involve members of the immediate family of a fiduciary. On the other hand, it is equally true that in the case at bar common membership in a family is the only fact upon which to predicate the supposition that unfair advantage was obtained over other bond owners by Mollie Schroeder and June Kuptz.

Consideration of the claim of Robert Schroeder, appellee in Case No. 9843, throws additional light upon the purchases of Franklin Building first mortgage bonds not only by himself but also on behalf of his mother and sister. It appears from the evidence that he made his first purchase of bonds in 1942 from the Wisconsin State Banking Commission while he was a law student. He paid Nine ($9.00) Dollars for a One Hundred ($100) Dollar bond. Subsequently he entered the Navy, and during his absence his father, at his direction, made some additional buys for him. All purchases were made with his own money. He returned from service about December of 1945, and then entered the office of his father engaging in the law and real estate business. A great many of the bonds purchased by him were bought from one John Ruppa, who, with some associates, filed, in 1943, an involuntary petition for reorganization against the corporate debtor. The evidence indicated that this proceeding was not an attempt, in good faith, to reorganize the debtor. It was opposed by the Bondholders' Committee. The District Court refused to disturb the possession of the Bondholders' Committee. This petition was finally dismissed and the bonds of Ruppa and his associates were purchased. It clearly appears that not only the members of the Bondholders' Committee, but also a large majority of the bondholders were fearful that if the bonds got into unfriendly hands, all the constructive efforts of the Committee might be nullified.

There can be little doubt that Robert Schroeder and his mother and sister knew of and dreaded the possibilities of the situation. The husband and father, William A. Schroeder, had exhausted his resources in investments in the stock and junior encumbrances of the corporate debtor. The Bondholders' Committee had taken over a gloomy prospect and through their continued efforts had placed the property in a position where it was possible that the bondholders might be secured from further loss. If, however, the bonds were allowed to get into unfriendly hands the bright prospect might be utterly ruined.

Under such circumstances it would seem to be natural for the wife and children of William A. Schroeder to risk some portion of their accumulations to save a situation for which many people would regard him as responsible. The amounts they used in making these purchases were not excessive, they did not exhaust their savings in the project. They did nothing to create or establish a market in the Franklin Building Bonds. They acted naturally and in the open—there was, as we have said, no shadow of suspicion that they were acting on behalf of the husband and father—no pretense that they were a mere front for

him or any other fiduciary. We are convinced that the orders of the District Court allowing their claims in full, as filed, were justified.

The orders entered by the District Court in Cases Nos. 9842, 9843 and 9844 are affirmed.

KERNER, Circuit Judge (concurring in part and dissenting in part).

I agree that the trial court, for the reasons stated in the majority opinion, properly limited the Simonsen claim. I cannot, however, bring myself to the conclusion reached by my colleagues, that the claims of the appellees in appeals Nos. 9843 and 9844 should not likewise have been limited.

I desire to add but a few words concerning the facts. In No. 9843, most of Robert W. Schroeder's bonds were purchased while his father was both a member of the bondholders' committee and its managing agent and during the pendency of the involuntary Chapter X petition. During a great part of this period Robert shared office space with his father, and the purchase of many of his bonds was arranged by him. Robert relied upon his father's business judgment, and gave him complete discretion and authority to effect purchases for him.

In No. 9844, Mollie Schroeder's bonds and all of June Kuptz's bonds were acquired while William A. Schroeder was a member of the bondholders' committee. During most of the period in which June's bonds were purchased she lived with her parents. All the purchases of these bonds were arranged by William except for an occasional purchase arranged by Robert, yet William had complete discretion and authority in making the purchases.

The trial court's decision in both appeals was bottomed on the ground that these claimants purchased their bonds with their own funds. There is no question, however, that the acquisition of these bonds was a family enterprise directed by William who had complete discretion and authority to make purchases, and it is reasonable to infer that the bonds purchased by Robert W. Schroeder, Mollie Schroeder and June Kuptz were acquired in contemplation of reorganization proceedings and when the debtor was a prospective subject of judicial relief.

A bankruptcy court is essentially a court of equity, applying principles and rules of equity jurisprudence. It is empowered to allow or disallow claims and to determine controversies in relation thereto. It has full power to inquire into the validity of any claim asserted against the estate and to sift the circumstances surrounding any claim, to see that injustice or unfairness is not done in the administration of the bankrupt estate. Pepper v. Litton, 308 U.S. 295, 304–308, 60 S.Ct. 238, 84 L.Ed. 281. A trustee must exclude all considerations of the welfare of third persons, 3 Bogert's Trusts & Trustees, § 543, and administer the trust solely in the interest of the beneficiary. Restatement of the Law, Trusts, § 170. Hence, in the situation here appearing, it seems to me that Robert W. and Mollie Schroeder, as well as June Kuptz, must be charged with the same equities that were charged to William when he purchased bonds in his own behalf, and the principles enunciated in Re Norcor Mfg. Co., 7 Cir., 109 F.2d 407; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A. L.R. 1; Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed 151; In Re Midland United Co., D.C., 64 F.Supp. 399, 416, affirmed 3 Cir., 159 F.2d 340; and In re The Van Sweringen Co., 6 Cir., 119 F.2d 231, govern those appeals.