**In re CANDY BRAZ, INC., Debtor.**

**Bankruptcy No. 85 B 00724.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Aug. 9, 1988.

William D. Kelly, Chicago, Ill., for debtor Candy Braz, Inc.

---

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 incorporated by Federal Rule of Bankruptcy Procedure 7056 filed by Bernard Chaitman (the "Trustee") as trustee for the estate of Candy Braz, Inc. ("Candy Braz") on objections to the allowance of claims filed by Mahmud Issa Mohmad Saleh ("Issa") and Ibrehim Sayes ("Sayes") and on cross motions for summary judgment filed by Issa and Sayes. For the reasons set forth herein, the Court having considered all the pleadings and exhibits filed does hereby deny the Trustee's motion for summary judgment on the claims of Issa and Sayes. The Court does hereby grant Issa's and Sayes' cross motions for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. These motions constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (B), (O).

## II. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings in the Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Hossman v. Spradlin,* 812 F.2d 1019, 1020 (7th Cir.1987).

The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when no genuine issue of material fact is in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d

202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). On cross motions for summary judgment, the Court must rule on each party's motion individually, denying both motions if a genuine issue of material fact exists. *ITT Indus. Credit Co. v. D.S. America, Inc.*, 674 F.Supp. 1330, 1331 (N.D.Ill.1987); *Wausaw Ins. Co. v. Valspar Corp.*, 594 F.Supp. 269, 270 (N.D.Ill. 1984).

## III. FACTS AND BACKGROUND

On January 17, 1985, Candy Braz filed a Chapter 11 petition for relief under the Bankruptcy Code. Subsequently, on January 18, 1985, Bernard Chaitman was appointed as Trustee. The case has proceeded as a liquidation of Candy Braz's assets.

## IV. DISCUSSION

### A. *Claim of Sayes*

The claimant Sayes is the brother-in-law of Sean Saleh ("Saleh"), the president of Candy Braz. On December 17, 1984, Sayes gave Saleh a cashier's check from Southwest Federal Savings and Loan Association made payable to Candy Braz in the amount of $40,000.00. Subsequently, on that same day the check was deposited into Candy Braz's account at the Marquette National Bank in Chicago, Illinois. On May 8, 1985, Sayes filed a proof of claim in the amount of $40,000.00 together with a copy of a promissory note dated December 12, 1984. On January 29, 1987, the Trustee filed an objection to the allowance of the claim of Sayes. The Trustee's objection was based in part on the failure of Candy Braz's books and records to reflect that a loan transaction took place.

■ In the motion for summary judgment, the Trustee contends that Sayes could not enforce the claim against Candy Braz outside of the bankruptcy court. The Trustee claims that the money was a personal loan to Saleh and not a loan to Candy Braz as a corporation. The deposition of Sayes, attached to the Trustee's motion for summary judgment is dispositive on the issue of whether the money was a loan to the corporate entity or a personal loan to one of its officers. Sayes stated in his deposition:

> I need $40,000 because the company was behind in bills. And I told [Saleh], you know, "I'm looking for business myself." [Saleh] said, "I could give you the money when you need it." I said, "Okay. Two month I need my money." [Saleh] said, "Okay." We have breakfast, we went to the bank together, I pulled cashier's check for him, I give it to him at the bank.

The crucial evidence is that the cashier's check obtained by Sayes was made payable to Candy Braz, not to Saleh. Moreover, the check was deposited into Candy Braz's corporate bank account, not a personal account of Saleh.

The Trustee cites Section 502 of the Bankruptcy Code in support of his contention that Sayes' claim is unenforceable against Candy Braz's estate. Section 502 provides in pertinent part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the

court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

11 U.S.C. § 502(a), (b)(1).

■ The Trustee asserts that Sayes' claim is personal against Saleh and not against Candy Braz. Claims asserted by a relative of the debtor are carefully scrutinized. *In re McClelland*, 275 F. 576, 580 (S.D.Cal.1920); *Walter v. Atha*, 262 F. 75, 80 (3rd Cir.1919). However, the fact that a relative of a debtor files a claim does not in and of itself suggest that the claim is not genuine. The *McClelland* court noted that "[i]t is fundamental ... that a relative of a bankrupt has a perfect right to loan the bankrupt money, and, having done so, he has a perfect right, the same as any other person, to file a claim in the bankrupt's estate and participate in the dividends...." 275 F. 576 at 580.

The fact that the transaction took place between relatives does not debar the claimant from sharing in the estate. Sayes has supported his claim by adequate proof and has met his burden of proof under Federal Rule of Bankruptcy Procedure 3001(f). The Trustee, on the other hand, has merely made unsupported conclusions. There is no convincing evidence that the money was either a personal loan or a gift to Saleh. The documentary evidence supporting Sayes' claim shows he holds an unsecured $40,000.00 promissory note with no named payee, purportedly signed by a vice president of Candy Braz. The consideration supporting the note is evidenced by a subsequently dated cashier's check payable to and endorsed by Candy Braz. The bank account statement shows the deposit of the check into that corporate account.

Sayes filed a Rule 12(e) statement to support his cross motion. The Rule 12(e) statement adopts most of the Trustee's Rule 12(e) statement of material facts. The only facts not adopted by Sayes are that Sayes did not ask Saleh for the money until after the filing of the bankruptcy petition and that Sayes is not familiar with the principals of Candy Braz. The Court does not find these facts material so as to preclude the entry of summary judgment. None of the additional facts in Sayes' Rule 12(e) statement have been denied by the Trustee. Moreover, neither party has filed a Rule 12(f) statement. Therefore, all material facts set forth in the pleadings are not disputed and these additional facts set forth in Sayes' Rule 12(e) statement are deemed admitted by the Trustee.

Accordingly, the Court will deny the Trustee's motion for summary judgment. The Court will, however, grant Sayes' motion for summary judgment because no genuine issue of material fact is in dispute. As a matter of law the claim should be allowed in the amount of $40,000.00 as an unsecured claim. Candy Braz ultimately received and had the benefit of Sayes' funds. Allowance of the claim against the estate of Candy Braz produces an equitable result under the facts and circumstances.

### B. *Claim of Issa*

■ On May 8, 1985, Issa filed a proof of claim in the amount of $200,000.00 together with a copy of a promissory note with no named payee, dated June 22, 1984, purportedly signed by a vice president of Candy Braz. Issa is a cousin of Saleh. Issa moved to the United States in May 1984 and lived with Saleh for less than a month. The circumstances surrounding Issa's claim are somewhat similar to, but substantially more complex than, those regarding Sayes' claim. As evidenced by Issa's deposition and supporting documentation filed with the cross motions, on or about May 4, 1984, at Sayes' suggestion and request, Issa deposited two cashier's checks totaling over $264,000.00 into a new account opened in both their names at the Marquette National Bank (account number 130–874–4). At Saleh's request and with Issa's consent, on or about May 10, 1984, Saleh withdrew $210,000.00 from that account by check and deposited the check into another account at

Marquette National Bank in Saleh's name alone (account number 130–876–0). Subsequently, on June 24 and 29, 1984, two separate checks were drawn on the second account by Saleh in the respective amounts of $100,000.00, each payable to Candy Braz. The checks were deposited in Candy Braz's corporate account (005–116–6), on June 24 and 29, 1984, respectively. The bank statement for the third account reveals that subsequent checks were drawn on that corporate account showing those funds were utilized in Candy Braz's business.

Issa testified that he authorized Saleh to draw moneys out of the first account to "apply to the business" and "expand the business." He further testified that he received a $200,000.00 check drawn on the Candy Braz account as a guarantee that he would be repaid those funds and as proof of the loan arrangement. Although that check was never negotiated and was dated May 9, 1984, Issa's uncontroverted testimony was that he received the check approximately one to one-and-a-half months after that date. Issa further testified that during his short visit in May 1984 Candy Braz looked like a worthwhile business and he agreed to invest therein. Apparently, Saleh utilized the approximate $64,000.00 balance of the initial deposit in the first account for his own purposes. There is no evidence clearly indicating that Candy Braz had the benefit of those funds.

Issa contends that this series of checks issued and drawn on various accounts had the net effect of a loan guarantee agreement whereby Issa was to be repaid $200,-000.00 under certain terms and conditions. Thus, this "agreement" in part was evidenced by Candy Braz's $200,000.00 check which was never negotiated by Issa. The series of intermediate transactions involving checks deposited into and drawn on personal accounts of Issa and Saleh, and not directly from Issa to the account of Candy Braz, compounds the complexity of the facts and gives rise to the Trustee's arguments that Issa's real claim is against Saleh personally and not Candy Braz. Issa's deposition transcript has been filed along with copies of the various checks and account statements. Issa's testimony sub-stantially supports his claim of a loan to be repaid by Candy Braz rather than the Trustee's conclusion of a mere personal obligation to be repaid only by Saleh. Candy Braz ultimately received the $200,000.00 from Issa. Saleh did not retain that amount of Issa's original deposit. He apparently used the balance for his own purposes.

Issa filed a Rule 12(e) statement to support his cross motion which adopts most of the Trustee's Rule 12(e) statement of material facts. The only fact not adopted by Issa is the intent of Issa to share proceeds of the first account with Saleh. The Court does not find this fact material so as to preclude entry of summary judgment. None of the additional facts in Issa's Rule 12(e) statement have been denied by the Trustee. Moreover, neither party has filed a Rule 12(f) statement. Therefore, all material facts set forth in the pleadings are not disputed and those additional facts set forth in Issa's Rule 12(e) statement are deemed admitted by the Trustee.

From the foregoing evidence, the Court finds that Candy Braz effectively benefited from at least $200,000.00 of proceeds from the initial deposit. Although tracing of the proceeds through the accounts is somewhat difficult and Saleh was involved as an intermediary of this unusual business transaction, it is undenied that Candy Braz did have the benefit of that amount of Issa's moneys. Under the *McClelland* and *Walter* holdings discussed above, Issa's claim has been closely scrutinized. As the Seventh Circuit Court of Appeals noted in *In re Franklin Bldg. Co.*, 178 F.2d 805, 809 (7th Cir.1949):

A bankruptcy court is essentially a court of equity, applying principles and rules of equity jurisprudence. It is empowered to allow or disallow claims and to determine controversies in relation thereto. It has full power to inquire into the validity of any claim asserted against the estate and to sift the circumstances surrounding any claim, to see that injustice or unfairness is not done in the administration of the bankrupt estate. *Pepper*

*v. Litton,* 308 U.S. 295, 304–308, 60 S.Ct. 238, 84 L.Ed. 281....

178 F.2d at 809.

Accordingly, the Court finds that notwithstanding the unusual facts and circumstances of the transactions among Issa, Saleh and Candy Braz, it would be inequitable to disallow Issa's claim when Candy Braz effectively had the use and benefit of his money. Therefore, the Court will deny the Trustee's motion for summary judgment. The Court will grant Issa's motion for summary judgment because no genuine issue of material fact is in dispute and the Court concludes, as a matter of law, the claim should be allowed in the amount of $200,000.00 as an unsecured claim.

## V. CONCLUSION

For the foregoing reasons, the Court hereby denies the Trustee's motions for summary judgment on the claims of Issa and Sayes. The Court does hereby grant the motions for summary judgment filed by Issa and Sayes.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.