## In re McLEAN INDUSTRIES, INC., et al., Debtors.

### Bankruptcy Nos. 86–B–12238 (HCB) through 86–B–12241 (HCB).

United States Bankruptcy Court, S.D. New York.

Nov. 28, 1990.

---

Stern, Dubrow & Marcus, P.C. by Jo Anne C. Adlerstein, Maplewood, N.J., for U.S. Lines, Inc. & U.S. Lines (S.A.), Inc. Reorganization Trust.

Tabak & Mellusi by Jacob Shisha, New York City, for Agostine A. Charles.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Before the Court is a motion by Agostine A. Charles[1] to lift the automatic stay to proceed with a personal injury lawsuit against United States Lines, Inc. & United States Lines (S.A.), Inc. Reorganization Trust (the "Trust"). By the same motion, Charles seeks to amend his claim from $90,000 to $400,000. The Trust objects to the motion and the amendment.

### I

Prior to filing for bankruptcy, U.S. Lines, Inc. ("U.S. Lines") and U.S. Lines (S.A.), Inc. ("U.S. Lines SA") operated one of the world's largest container lines and cargo shipping companies. On November 24, 1986, U.S. Lines filed a petition for reorganization under Chapter 11, *see* 11 U.S.C. § 1101 *et seq.*, (the "Code") along with three related companies, McLean Industries, Inc., ("McLean") a holding company

---

**1.** The claimant's name appears in various places as Agostine A. Charles, *see* Movant's Memorandum of Law in Support of Motion for Lifting Stay 1, Antonio A. Charles, *see* Notice of Motion 1, and Agostino A. Charles, *see* Affidavit of Jacob Shisha ¶ 4. For sake of clarity, we will refer to the claimant simply as "Charles".

with six subsidiaries, First Colony Farms, Inc., a McLean subsidiary owning all the shares of U.S. Lines., and U.S. Lines SA, a direct McLean subsidiary.[2] Pursuant to an amended plan of reorganization confirmed as modified on February 6, 1990, (the "Plan"), the Trust was established to liquidate claims and make distributions to claimants. In pertinent part, the Plan, recognizing the general nature of U.S. Lines' insurance coverage, divided personal injury claims into two parts: 1) that portion under $100,000 to be satisfied by issuance of stock in Janus Industries Inc., the renamed reorganized debtor, ("Janus"); and 2) the excess payable in applicable insurance recoveries.

A

For the most part, the facts underlying this claim are not in dispute. Charles was a veteran sailor in the merchant marine; he joined the service of the SS AMERICAN RESOLUTE, a vessel owned by U.S. Lines, on May 24, 1985. Sometime during his maiden voyage, Charles slipped on the deck of the ship's recreation room and struck his head on a television set. As a result of the fall, the vision in his left eye was impaired. After the voyage ended on July 12, 1985, Charles attended a medical clinic where physicians determined he suffered a detached retina. Charles underwent surgery to correct the detached retina on August 5, 1985. He was deemed fit for duty and returned to work on January 21, 1986. The eye deteriorated during the voyage and, after the journey ended on June 27, 1986,

Charles underwent a second operation to correct the detached retina. Despite the second surgery, Charles was rendered unfit for duty in the merchant marine.

Charles timely filed a proof of claim with the bankruptcy court listing $90,000 as the amount owed as a result of the damage to his eyesight from the slip and fall (the "Original Claim").[3] On August 30, 1990, Charles filed a second claim for $400,000 for damage to his vision resulting from the same injury (the "Amended Claim"). Charles did not seek leave of this Court to amend the Original Claim. *See Bishop v. United States (In re Leonard)*, 112 B.R. 67, 71, 20 Bankr.Ct.Dec. (CRR) 561 (Bankr. D.Conn.1990) (need leave of court to amend); *See also United States v. Kolstad (In re Kolstad)*, 101 B.R. 492, 494 (Bankr.S. D.Tex.1989) (amendments are not automatic); *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985) (same). Instead, Charles filed a motion on September 13, 1990 seeking to lift the automatic stay allowing him to prosecute the personal injury claim in district court as required by 28 U.S.C. § 157(b)(5).[4] The Trust subsequently offered to settle the Original Claim for $90,000 worth of Janus stock as provided in the Plan. Charles rejected the settlement offer insisting that any settlement be paid in cash. The Trust responded with a letter objection to Charles' motion to lift the stay. On October 25, 1990, U.S. Lines and the Trust recast their initial opposition to Charles' motion to lift the stay as an objec-

---

**2.** For a more detailed portrait of the complex facts and history of this case, *see In re McLean Indus., Inc.*, 87 B.R. 830 (Bankr.S.D.N.Y.1987); *In re McLean Indus., Inc.*, 70 B.R. 852, 16 Collier Bankr.Cas.2d (MB) 645, 15 Bankr.Ct.Dec. (CRR) 864, Bankr.L.Rep. (CHH) ¶ 71,745 (Bankr.S.D. N.Y.1987).

**3.** In a rider attached to the Original Claim, Charles asserts that the $90,000 figure:

was offered to the Debtor as a proposed settlement during the Settlement Claims Program. In the event this matter is not settled or resolved in the Bankruptcy Court and claimant is permitted to prosecute his claim in a court other that [sic] the Bankruptcy Court, claimant reserves the right to claim the full mea-

sure of damages permitted by law and not be limited to the aforesaid amount offered in settlement.

Rider to Original Claim ¶ 2. Charles argues that the reservation of rights empowers him to amend his claim at any time. Such language, however, cannot sanction amendments absent compliance with the test set out in Part II.

**4.** Section 157(b)(5) provides:

The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C.A. § 157(b)(5).

tion to Charles' amendment of the Original Claim.[5]

### B

■ The Trust presents the following arguments for denying Charles' amendment of his Original Claim. Allowing Charles to amend and continue to prosecute a claim which has been allowed[6] works undue prejudice to the estate and undermines the Trust's interest in efficient administration and finality of claims. Specifically, permitting Charles to amend would send a signal to other claimants to amend their claims in the hope of reaching insurance proceeds; thereby opening the floodgates and creating an administrative nightmare for the Trust. Since the deductible is paid in Janus stock, each claimant who amends her claim to meet the deductible further dilutes the value of the Janus stock. Moreover, a claimant must assert a claim beyond the Trust's $100,000 deductible in order to tap insurance proceeds. Thus, a flood of amendments would significantly multiply litigation defense costs.

Second, the Trust contends that Charles' vision has been worsening for some time and the only reason for the delay in filing an amendment was strategic. Charles currently has pending an *in rem* action against the SS AMERICAN RESOLUTE premised on the same slip and fall as the Original Claim (the *"In Rem* Action").[7] Consequently, there is no reason to permit the amendment since Charles is free to recover the full $400,000 in the *In Rem* Action. Moreover, the Trust alleges Charles is simply attempting to consolidate the *In Rem* Action against the SS AMERICAN RESOLUTE with an *in personam* action against U.S. Lines itself and thereby obtain a jury trial for both actions.

In reply, Charles submits that the amendment should be allowed to accurately reflect and compensate for the loss of all vision in his left eye as opposed to simply reduced vision in the eye. Further, Charles sees no harm befalling the estate. Under a *"Liman* Agreement",[8] the estate will not bear the cost of any award beyond $100,-000. As to the tactical maneuvering objection, Charles responds that a negligence claim cannot be maintained in the *In Rem*

---

5. Since Charles needs leave of court to amend and the Trust objects to Charles' motion to lift the stay on the ground that the amendment is improper, Charles' motion is deemed to include a request to amend the Original Claim.

6. Had the Court entered an order allowing Charles' Original Claim, section 502(j) of the Code and Rule 3008 of the Federal Rules of Bankruptcy Procedure would govern the question of whether to allow a subsequent amendment.

Section 502(j) provides in pertinent part:
A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case.
11 U.S.C.A. § 502(j) (1990).
Rule 3008 provides for reconsideration of claims:
A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.
Fed.R.Bankr.P. 3008.
Although at first blush Section 502(j) appears to govern changes to any allowed claim, Rule 3008 makes clear that the "for cause" standard of section 502(j) only applies where there has been a court order allowing the claim. *See*

*Camp v. Carson (In re Government Securities Corp.),* 95 B.R. 829, 833 (S.D.Fla.1988) (section 502(j) applies only to "reconsideration of an *order"* allowing or disallowing a claim) (emphasis in original). This reading is consistent with section 502(a) which deems all claims allowed until objected to. Moreover, to hold that a claim cannot be amended unless the amendment meets the fairly strict test of section 502(j) would eviscerate the liberal amendment policies embodied in the federal rules of procedure and the case law.

7. *Charles v. United States,* 90 CIV 0154 (S.D. N.Y.) (KMW).

8. *See Liman v. American Steamship Owners Mutual Protection & Indemnity Ass'n,* 299 F.Supp. 106 (S.D.N.Y.), *aff'd,* 417 F.2d 627 (2d Cir.1969), *cert. denied,* 397 U.S. 936, 90 S.Ct. 946, 25 L.Ed.2d 116 (1970). Under a *Liman* agreement, if a claimant, for example, procures a judgment of $50 and the insured has a deductible of $5, the insured pays the claimant $50. Claimant holds this sum in escrow until the insured receives reimbursement from its insurer for the $45. At that point, the claimant withdraws the proceeds from escrow, returns the $5 deductible to the insured, and retains the balance of $45.

The Plan contemplates that the Trust may enter into such arrangements.

Action; such actions recognize only claims for unseaworthiness or a Jones Act[9] violation. As a result, the *in personam* action against the Debtor must be allowed to proceed in order to compensate Charles for the damage to his eye resulting from any breach of the Debtor's duty of care.

## II

It is well-settled that the decision to permit an amendment of a proof of claim rests within the sound discretion of the bankruptcy judge. *Associated Container Transportation (Australia) Ltd. v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)*, 58 B.R. 547, 553 (S.D.N.Y.1983); *Futuronics Corp. v. Sycamore Indus., Inc., (In re Futuronics Corp.)*, 23 B.R. 281, 283 (S.D.N.Y.1982). Courts are not without guidance in this area, however. The leading case in this circuit on the amendment of claims, *In re G.L. Miller & Co.*, 45 F.2d 115, (2d Cir.1930), held that allowance of a subsequent claim turns on whether the subsequent claim may be fairly characterized as an amendment of a timely filed claim or in substance a new claim. The subsequent claim is an amendment if it:

1) corrects a defect of form in the original claim;

2) describes the original claim with greater particularity; or

3) pleads a new theory of recovery on the facts set forth in the original claim.

*Id.* at 116. The amendment, however, cannot be used to create a new claim: the court in *Miller* explicitly rejected an attempt to "use an 'amendment' as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed." *Id.* The focus of this test, therefore, is whether the initial claim provided the trustee or debtor-in-possession with reasonable notice of the later claim. Cases decided under the Code in this circuit expressly following *Miller* include: *In re Kulick*, 85 B.R. 680, 681 (E.D.N.Y.1988); *Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 775

(Bankr.S.D.N.Y.1988); *In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y 1985).

Over the years, the test has been reformulated and subject to significant lower court gloss. It has evolved into essentially a two-part test. The first prong is the *Miller* test: the court must determine that the proposed amended claim is reasonably related to a timely filed claim and not a veiled attempt to file a new claim. *See Black & Geddes*, 58 B.R. at 553; *Bishop v. United States (In re Leonard)*, 112 B.R. 67, 71, 20 Bankr.Ct.Dec. (CRR) 561 (Bankr. D.Conn.1990). *See also United States v. International Horizons, Inc. (In re Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216, 12 Collier Bankr.Cas.2d (MB) 91, 12 Bankr.Ct. Dec. (CRR) 1022, Bankr.L.Rep. (CCH) ¶ 70,245 (11th Cir.1985). The second prong is an equitable analysis: granting the amendment must be fair and impose no undue hardship on a party. *See, Black & Geddes*, 58 B.R. at 553; *Leonard*, 112 B.R. at 71. When balancing the equities, important factors include:

1) undue prejudice to opposing party, *see Futuronics Corp. v. Sycamore Indus., Inc., (In re Futuronics Corp.)*, 23 B.R. 281, 283 (S.D.N.Y.1982);

2) bad faith or dilatory behavior on part of the claimant, *see In re Hertz*, 38 B.R. 215, 218, 10 Collier Bankr.Cas.2d (MB) 316 (Bankr.S.D.N.Y.1984);

3) whether other creditors would receive a windfall were the amendment not allowed, *see In re Saxe*, 14 B.R. 161, 165 (Bankr.S.D.N.Y.1981);

4) whether other claimants might be harmed or prejudiced, *see Black & Geddes* at 553;

5) the justification for the inability to file the amended claim at the time the original claim was filed, *see Black & Geddes*, 58 B.R. at 553.

Put briefly, if an amendment does not seek recovery on any new or different claim, amendment will be liberally granted absent overriding equitable concerns. *W.T. Grant*, 53 B.R. at 420; *Hertz*, 38 B.R. at 218.

---

**9.** 46 U.S.C.A.App. § 688 (1989).

### III

In this case, there is no dispute that the Original Claim was timely filed or that it provided the Trust with reasonable notice of the underlying facts of Charles' claim. The Original Claim provided the Trust with knowledge that Charles was pursuing a personal injury tort resulting from a slip and fall occurring aboard the SS AMERICAN RESOLUTE. The Amended Claim does not add, delete, or otherwise change any fact set forth in the Original Claim. It arises out of the identical set of facts as the Original Claim.

The only difference between the two claims is in the amount claimed as compensation: a change due to an increase in the severity of the injury resulting from the accident. Instead of seeking compensation for a percentage loss of vision in his left eye as requested in the Original Claim, Charles seeks, through the Amended Complaint, compensation for the complete loss of vision in his left eye. The facts giving rise to Charles' loss of vision and cause of action in the Amended Complaint, however, remain unchanged. It is clear, therefore, that the first part of the test is satisfied: the Trust received timely and reasonable notice of the facts underlying Charles' Amended Claim and the Amended Claim is not an untimely attempt to interpose a new claim. *Cf. Int'l Horizons*, 751 F.2d at 1216 (affirming refusal to allow amendment of claim by IRS because subsequent claim did not "aris[e] out of the same occurrence or transaction" as the timely filed proof of claim).

Having satisfied the first part of the test, Charles' amendment must be freely permitted unless the Trust can demonstrate overriding equities militating strongly against the amendment. *See W.T. Grant*, 53 B.R. at 429; *Hertz*, 38 B.R. at 218. The Trust points to two harms allegedly resulting from the amendment: 1) the cost to the estate to defend the litigation; and 2) the administrative costs incurred when similar claimants amend their claims in the similar hope of reaching insurance proceeds.

This alleged prejudice to the Debtor's estate is, however, not sufficient to preclude amendment where no new claim is involved. The Trust's concern for finality of claims and efficient administration of the estate is valid and, at some point, might trump a claimant's interest in being adequately compensated and equally treated vis-a-vis other claimants. That point has not been reached here, however, where, for example, there is no allegation that allowance of the amendment would upset a forthcoming distribution or that there has been some justifiable detrimental reliance on the amount contained in the Original Claim prior to amendment.

As to the Trust's floodgates argument, there is no evidence that other claimants will rush to this Court seeking to amend their claims. If it appears, however, that claimants are amending their claims for no other reason than to tap insurance proceeds, then the Court will examine those amendments closely and accord more weight to the Trust's contention that such amendments would unduly burden the estate.

Permitting the amendment sought here accords, moreover, with Rule 15(a) [10] of the Federal Rules of Civil Procedure governing the amendment of pleadings. Although most bankruptcy courts do not discuss Rule 15 when determining the propriety of an amendment under the Code, several courts, including the district court in this district, have found Rule 15 to control amendments to claims in cases under the Bankruptcy Act of 1898. *See Futuronics*, 23 B.R. at 283. *See also Mountain Iron & Supply Co. v. Valley Steel Prods. Co. (In re Rhine)*, 213 F.Supp. 527, 534 (D.Colo. 1963) (Rule 15 is applicable to determining whether a claim in bankruptcy is amendable); *In re Leach*, 197 F.Supp. 32, 37 (W.D.

---

**10.** Rule 15(a) provides in relevant part:
A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or ... at any time within 20 days after it is served. Otherwise a party may amend the party's pleadings only by leave of court or by written consent of the party; and leave shall be freely given when justice so requires.
Fed.R.Civ.P. 15(a).

Ark.1960) (liberal amendment provisions of Rule 15 applicable in bankruptcy).

The test under Rule 15 is basically the same as that developed in the case law for amending claims in bankruptcy: the original pleadings must give notice of the transaction or occurrence giving rise to the plaintiff's cause of action in the amended pleading and the amendment must not substantially prejudice the opposing party. *See Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973). *See also S.S. Silberblatt, Inc. v. East Harlem Pilot Block Building 1 Housing Development Fund Co.*, 608 F.2d 28, 42 (2d Cir.1979) (justice always requires granting amendment unless plaintiff is guilty of undue delay, bad faith, or amendment unduly prejudices opponent). As to amending a damage clause under Rule 15(a), courts liberally grant such amendments because 1) the underlying facts remain constant and 2) since a plaintiff is required to prove at trial the extent of any damage she might have suffered, no prejudice can ensue from allowing the amendment. *See Syme v. Rowton*, 555 F.Supp. 33, 34 (D.Mont.1982) (permitting amendment to complaint to increase amount of damages sought since plaintiff is free to prove all damages regardless of amount pleaded). *See also Crues v. KFC Corp.*, 546 F.Supp. 217, 218–19 (E.D.Mo.1982), *aff'd in part, rev'd in part on other grounds*, 729 F.2d 1145 (8th Cir.1982) (allowing amendment after trial to reflect jury's verdict and thereby conforming pleadings to proof at trial as authorized by Rule 15(b)).

█ In this case, Charles seeks to amend only the amount of damages sought. No facts have changed. In such cases, amendment to reflect the increase in damages is freely permitted absent substantial prejudice, bad faith, or undue delay. No bad faith or undue delay is seriously alleged here.[11] Increased administration and litigation costs, cited by the Trust as a potential

prejudice, are not alone sufficient to overcome the policy favoring liberal amendments, particularly where the trial has not yet commenced. *See Silberblatt*, 608 F.2d at 42.

For the foregoing reasons, Charles' motion to lift the stay is to be granted subject to compliance with 28 U.S.C. § 157(b)(5), Charles' motion to amend his Original Claim is granted, the Trust's objection to Charles' motion to lift the stay is denied, and the Trust's objection to Charles' amendment of the Original Claim is likewise denied. It is

SO ORDERED.

---

11. The Trust argues that Charles should have claimed $400,000 in the Original Claim. While Charles' eyesight has been continually deteriorating since his fall, it was the total loss of vision in his left eye which precipitated the filing of the Amended Claim. It cannot be seriously contended that Charles is guilty of undue delay or dilatory behavior because he did not file a claim for $400,000 (reflecting the loss of all vision in his left eye) prior to actually losing all sight in the eye.