124 B.R. 335 (1991)
In re C.P.M. CONSTRUCTION, a General Partnership, adba Morgan Construction, Clarence Morgan Construction, Morgan Brothers Construction, Paul Morgan Excavating, and Larry Morgan Construction, Employer ID No. XX-XXXXXXX, and Larry E. Morgan, dba Larry Morgan Construction, and Jeannie Denise Morgan, and Paul Alan Morgan, dba Paul Morgan Excavating, and Diane Annette Morgan, Debtors.
In re CPM/MORGAN/MORGAN.
Bankruptcy No. 11-88-01647 M A.
United States Bankruptcy Court, D. New Mexico.
February 13, 1991.
*336 John F. Caffrey, Albuquerque, N.M., for debtors.
Tila Fleming Hoffman, Albuquerque, N.M., for CIT.
P. Diane Webb, Asst. U.S. Trustee, Office of the United States Trustee, Albuquerque, N.M.

MEMORANDUM OPINION
MARK B. McFEELEY, Chief Judge.
This matter came before the Court on December 4, 1990, to consider confirmation of the debtors' second amended plan dated September 25, 1990. Two issues were raised by CIT Group/Equipment Financing, Inc. (CIT), and the Court continued the confirmation hearing pending the resolution of these issues. The Court must decide: 1) whether an amended proof of claim filed after the bar date will be allowed; and 2) whether the debtors' plan violates the absolute priority rule.

FACTS
On July 22, 1988, an involuntary petition was filed against C.P.M. Construction by Larry E. Morgan and Paul Alan Morgan. On the same day, voluntary petitions were filed by Larry E. Morgan and Jeannie Denise Morgan and by Paul Alan Morgan and Diane Annette Morgan. The cases were consolidated for joint administration by order dated September 15, 1989.
An order for relief as to C.P.M. was entered in the jointly administered cases on March 16, 1990. On April 3, 1990, the debtors filed a motion to set claims bar date. That motion was granted on April 24, 1990, and the Court set May 31, 1990, as the claims bar date. A notice of claims bar date was sent to all creditors on May 1, 1990. The notice of claims bar date was supplemented on May 16, 1990, in order to notify creditors who were not listed on the original matrix provided by the Bankruptcy Court clerk. CIT Group is listed twice on the matrix which was sent on May 1, 1990, at a Denver address and at an address in Vancouver, Washington. CIT is also listed on the May 16, 1990, matrix, with an address *337 in Tempe, Arizona. CIT does not dispute that it received notice of the bar date.
On May 15, 1990, CIT timely filed its proof of claim in the amount of $136,651.15. The debtors filed their first disclosure statement and first plan of reorganization on June 15, 1990. The disclosure statement lists CIT's claim at $136,651.15. CIT did not file an objection to the disclosure statement.
On September 13, 1990, the debtors and CIT filed a stipulation valuing collateral (equipment) at $103,500. On September 25, 1990, the debtors' second disclosure statement was filed. CIT is provided for on page 13, where the disclosure statement states that CIT shall retain its lien and further states that the debtors believe the value of the equipment to be $103,500. The disclosure statement then indicates that any unsecured portion of CIT's claim will be treated as a class 11 unsecured claim. On October 16, 1990, the Court approved the second disclosure statement and fixed a time for balloting on the plan as well as for filing objections to the plan.
On October 29, 1990, without leave of Court, CIT filed an amended proof of claim. The claim was increased to $239,908.37. The additional $103,256.72 is explained on the amended proof of claim as representing "late charges accrued through date of filing on five accounts."[1]
On October 29, 1990, the debtors' counsel filed a certificate of service reciting that the plan, disclosure statement, ballot and a copy of the order approving disclosure statement and fixing time for filing acceptance or rejection of plan had been mailed to everyone on the matrix. On November 1, 1990, CIT filed a ballot which listed the amount of its claim at $136,651.65. On November 13, 1990, CIT filed an objection to confirmation, wherein it claimed that the debtors owe it $281,043.03.[2]
I. Whether an amended proof of claim filed after the bar date will be allowed?
In a case commenced under Chapter 11 of the Bankruptcy Code, the time for filing a proof of claim is set forth in Bankruptcy Rule 3003(c)(3). The time limit for filing a proof of claim is set by the court and may be extended for cause. Bankruptcy Rule 3003(c)(3). In this case, the claim bar date was set as May 31, 1990. CIT filed its proof of claim on May 15, 1990. CIT did not, as allowed by Bankruptcy Rule 9006(b)(1), move for an extension of time in which to file an amendment prior to the expiration date. A motion for extension of time, filed after the expiration of the original period, will be granted upon showing of excusable neglect. In re Dix, 95 B.R. 134 (9th Cir. BAP 1988). CIT did not request, after the expiration of the bar date, an extension of time to file its amended claim.
The § 341 meeting[3] was held on December 3, 1990, one day before the confirmation hearing. CIT argues that it was deprived of important procedural protections because the normal procedures were not followed in this case. Bankruptcy Rule 2003(a) requires that the meeting of creditors be held within 40 days of the order for relief. Through inadvertence the normal procedures were not followed in this case. CIT now argues that it should not be held to the claims bar date set by the Court because of the failure to timely schedule the § 341 meeting. This is the first time that CIT has made this argument. CIT did not bring this matter to the Court's attention in the months prior to the confirmation hearing date, while the claims bar date came and went. Raising the argument at *338 this time appears to be nothing more than an attempt to circumvent the claims bar date. The Court finds that it is without merit. The creditors are bound by the deadlines set by the Court. If CIT felt that it was deprived of procedural protections, it should have raised the issue long before now.
CIT argues that it was entitled to question the debtor at the § 341 meeting before it filed its proof of claim. CIT's argument is deflated by the fact that it filed its first proof of claim in May, five months before the § 341 meeting. Moreover, the amended proof of claim's increase in amount is attributed to late charges accrued on five accounts through the date of filing. These late charges were readily ascertainable without need to question the debtor. Although there is a general sequence of events in the administration of a bankruptcy case, that sequence does not need to be followed in all cases. In In re O.P.M. Leasing Services, Inc., the court altered the sequence of events because it yielded an efficient and just method of administering the debtor's case. Such an arrangement, however, did not provide sufficient reason to allow the late filing of proofs of claims. 48 B.R. 824 (S.D.N.Y. 1985). Even where the sequence of events was not altered by the court, but was through inadvertence, deadlines must be observed. Courts have developed a two-prong test to determine if amendments to proofs of claims will be allowed. The first prong of the test looks at the original claim and the amended claim to see if the amended claim "reasonably relates" to the original claim. In re McLean Industries, Inc., 121 B.R. 704, 21 B.C.D. 139 (Bankr.S.D.N. Y.1990). The amended claim must not be a "veiled attempt to file a new claim." Id. 121 B.R. 704, 21 B.C.D. at 141. An amendment is allowed if it corrects a defect of form, describes the claim with greater particularity, or pleads a new theory of recovery. Id. The central question is whether the debtor received reasonable notice of the later claim. In this case, CIT's amended proof of claim stated that the additional amount claimed was for "late charges accrued through date of filing on five accounts." Debtor's Exh. 22. The debtors could reasonably expect that late charges would accrue on an account which was the basis for the original proof of claim. The debtors knew that $136,651.65 was the principal amount owed. Late charges and interest charges on the principal go to the same claim; they do not create a new claim. Therefore, the first prong of the test is met. CIT's amended claim reasonably relates to the original claim and is not an attempt to file a new claim.
The second prong of the test requires that the amendment be fair and impose no undue hardship. In re McLean Industries, Inc., 121 B.R. 704, 21 B.C.D. 139 (Bankr.S.D.N.Y.1985). The amendment must not prejudice the debtor or the estate. In re Candy Braz Inc., 98 B.R. 370, 380 (Bankr.N.D.Ill.1988). Here is where CIT's amended proof of claim must fail. The amendment was filed on October 29, 1990, four months after the expiration of the claims bar date. On the same day, the debtors sent out the second amended disclosure statement, plan, and ballots. Indeed, CIT returned its ballot on November 1, 1990, listing its claim at $136,651.15, two days after it filed its amended proof of claim. The first notice that the debtors received of CIT's increased claim was in CIT's objection to confirmation filed November 13, 1990, which states that, "CIT is a secured creditor with a debt of $239,908.37." CIT knew what amount the late charges on the five accounts were on the date of filing in 1988. There was no reason why the original proof of claim could not have included the late charges claimed. CIT received notice of the first and second disclosure statements and did not object to the amount stated in either document. The debtors propounded a plan based on the two disclosure statements and the objections thereto, all the while treating CIT's claim as stated in the original proof of claim. CIT's increase of its claim by 75% just before the confirmation hearing is clearly prejudicial to these debtors. Therefore, CIT's amended proof of claim will not be allowed.
*339 II. Whether the debtors' plan violates the absolute priority rule?
If the debtors cannot obtain acceptance of the plan by vote, the plan can be confirmed over objection pursuant to the Code's "cramdown" provisions. See 11 U.S.C. §§ 1126(c), 1129(a)(8), 1129(b)(1). To be crammed down over the objection of creditors, the plan must be fair and equitable. 11 U.S.C. § 1129(b)(1). With respect to a class of unsecured creditors, fair and equitable means that they would receive under the plan property of a value equal to the allowed amount of their unsecured claims, or that no class junior will share under the plan. 11 U.S.C. § 1129(b)(2)(B)(ii). This is known as the "absolute priority rule." The plan proposes that the debtors, a class junior to the unsecured creditors, retain property consisting of their partnership interests in C.P.M. Construction. The plan also proposes payment of only 60% of allowed unsecured claims, less than in full, and therefore, it violates the absolute priority rule. The question then becomes whether the debtors fall into an exception to the rule.
There is an exception to the absolute priority rule.[4] The debtor can retain an interest to the extent that new value is put into the estate. The new value must be "in money or money's worth" and must be substantial. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). A substantial contribution means that to retain property to the exclusion of the unsecured creditors, the contribution must at least equal the interest being retained. In re Ashton, 107 B.R. 670, 674 (Bankr.N.D.1989). The Supreme Court held that "labor, experience, and expertise" would certainly not constitute new value to allow confirmation over the objections of unsecured creditors. Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).
In the case at bar, the debtors argue that they will contribute "new value" which is substantial in relation to the interst being retained by virtue of the fact that they have worked at below market wages for the post-petition, pre-confirmation period and thus the estate has benefited because the company's expenses have been decreased. They attempt to distinguish Ahlers because there the labor which the debtors were going to contribute was a promise of future labor. Here, the debtors propose to contribute the wages from past labor, which they contend is ascertainable and can be assigned a specific value. The Court finds this argument to be without merit. Whether the labor is past or present, there is no difference. The distinction must be made between time and value. Time is not an asset until it has been converted into something upon which a creditor can levy, such as wages. In In re Pappas, the court stated, "[o]f course everyone's time is in some sense is one's earnings in that without time we cannot engage in activity that produces earnings." 106 B.R. 268, 271 (Wyo.1989). The court concluded that time was not an asset, citing to Ahlers and In re Stegall, 865 F.2d 140 (7th Cir.1989). But where a debtor contributes time and "through the sweat of his brow creates value . . . and contributes it to the bankrupt estate," then that would constitute new capital. In re Stegall, 865 F.2d at 143. Thus, time, by itself, cannot constitute a new contribution. The debtors volunteered their labor, without pay, for the post-petition, pre-confirmation period. If they had been paid a wage, and then turned it over to the estate, there actually would be a contribution of fresh capital to the estate. But where there was no money to pay the debtors, they cannot claim that what they would have been paid constitutes new value to the estate.
Furthermore, the practical aspects of what the debtors propose trouble the Court. If the Court were to allow post-petition, *340 pre-confirmation labor to constitute new value or a new contribution, debtors would try to prolong the confirmation process in order to increase the value to be put into the estate. Such a result would frustrate the purposes underlying chapter 11.
Assuming, arguendo, that past labor is a contribution to the estate, the debtors have not shown that their contribution is substantial in relation to their retained interest. The debtors claim that their contribution is substantial. They argue that their contribution of foregone wages is almost $54,000. They then compare this to the interest proposed to be retained, their interests in the partnership. In the balance sheet that accompanies the debtors' plan, the partnership interests are assigned a zero or a negative figure. Therefore, the debtors contend that their contribution of $54,000 is substantial in relation to their retained interest of zero or a negative figure. The "no value" argument was rejected by the Supreme Court in Ahlers.
Even where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains "property." Whether the value is "present or prospective, for dividends or only for purposes of control" a retained equity interest is a property interest to "which the creditors are entitled . . . before the stockholders can retain it for any purpose whatsoever."
Ahlers, 485 U.S. 197, 208, 108 S.Ct. 963, 974, 99 L.Ed.2d 169, 180 (1988) (citing, Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 508, 33 S.Ct. 554, 561, 57 L.Ed. 931 (1913). Judge Posner, in In re Stegall, noted, "there is a deeper point. It cannot be correct that, even if a farm could have a negative market value, any plan of reorganization whereby the bankrupt debtor contributed a penny or more to the operation of the farm could be crammed down the throats of the unsecured creditors." 865 F.2d at 144. Therefore, even if the Court were to find that foregone wages constituted new value, the Court could not find that the value of the contribution was substantial in relation to the retained interest.
Therefore, the Court finds that the plan violates 11 U.S.C. § 1129(b)(2)(B)(ii) and cannot be confirmed as proposed. This memorandum opinion constitutes the Court's findings of fact and conclusions of law. B.R. 7052.
An appropriate order shall enter.

ORDER
This matter came before the Court on December 4, 1990, to consider confirmation of the debtors' second amended plan dated September 25, 1990. The Court continued the confirmation hearing pending the resolution of the issues raised at the hearing. Debtors' counsel represented that if the outcome of either matter was adverse to the debtors that an amended plan and disclosure statement would have to be filed. For the reasons stated in the memorandum opinion entered herewith,
IT IS ORDERED that CIT Group/Equipment Financing, Inc.'s amended proof of claim is not allowed.
The Court also concludes that the Plan as proposed is not confirmable.
IT IS FURTHER ORDERED that the debtors file an amended disclosure statement and plan within 15 days of the entry of this order.
NOTES
[1] It is not clear whether the "filing" refers to the bankruptcy petition or to the amended proof of claim. It is assumed that it refers to the bankruptcy filing.
[2] The $281,043.03 claimed by CIT is broken down as follows: $103,500 secured pursuant to the stipulation valuing equipment; $177,543.03 unsecured and $41,134.66 as a gap creditor. CIT memorandum opposing confirmation, 2.
[3] 11 U.S.C. § 341 provides that the United States trustee shall convene and preside at a meeting of creditors within a reasonable time after the order for relief.
[4] There is still debate as to whether this exception survived the codification of the Bankruptcy Act. CIT argues that there is no exception to the absolute priority rule. The Supreme Court and the Seventh Circuit have not dealt directly with the issue, holding only that if such an exception existed, the facts before them would not support an exception. For purposes of this opinion, it is assumed that the exception exists.