**In re CARMELO BAMBACE, INC., Debtor.**

No. 90 B 20042.

United States Bankruptcy Court, S.D. New York.

Dec. 3, 1991.

Fink Weinberger, P.C., White Plains, N.Y., for Carmelo Bambace, Inc. (Richard L. Koral, of counsel).

Peter P. Paravati, P.C., Utica, N.Y., for New York State Teamsters Conference Pension & Retirement Fund (Vincent M. DeBella, of counsel).

DECISION ON OBJECTION TO CLAIM OF NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT FUND AND MOTION FOR ORDER COMPELLING PRODUCTION OF DOCUMENTS

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The debtor in this voluntary Chapter 11 case, Carmelo Bambace, Inc. ("Bambace"), objects to an Amended Proof of Claim filed by the New York State Teamsters Conference Pension and Retirement Fund ("Pension Fund") because the amendment relates to withdrawal liability while Pension Fund's timely claim was based on delinquent contributions. Pension Fund argues that its withdrawal liability claim is valid for various reasons. First, Pension Fund asserts that the withdrawal liability claim is not untimely because the Pension Fund advised the debtor by letters before the claims bar date that it had incurred withdrawal liability and that the letters constitute informal proofs of the claim. In addition, Pension Fund contends that even if the claim is time barred, amending the timely filed claim for outstanding contributions so that it includes withdrawal liability is proper under prevailing case law because the claims are directly related to each other and the debtor is not unduly prejudiced by the amendment because the debtor was aware of Pension Fund's intent to hold it liable. Pension Fund also alleges that it was unable to calculate the amount of its withdrawal liability claim because the debtor unjustly refused to produce its books and records for the purpose of an audit thereby preventing Pension Fund from timely filing the claim. Pension Fund argues that the amended claim should be recognized because otherwise the debtor would unfairly benefit from its dilatory tactics and legal recalcitrance.

## FACTUAL BACKGROUND

Bambace filed with this court on January 17, 1990 a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code and continued in possession and management of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108. The debtor is in the business of distributing beverages. Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), this court approved August 15, 1991 as the bar date by which claims and requests for payment were to have been filed. On August 28, 1991, the debtor's plan of reorganization was confirmed by order of this court pursuant to 11 U.S.C. § 1129. The court retained jurisdiction for purpose of permitting the debtor to file

objections to claims within 60 days of entry of the confirmation order.

Pension Fund is a multiemployer pension fund, as defined by 29 U.S.C. § 1002(37)(A). It was created by an Indenture of Trust entered into between participating employers and union locals affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("Teamsters"). Pension Fund is the sponsor of an employee benefit and multiemployer pension plan ("Plan"). Pension Fund receives contributions from participating employers which operate within the jurisdiction of local union branches affiliated with the Teamsters and which have joined Pension Fund's Plan. In turn, Pension Fund disburses pension and retirement benefits to qualified employee members of the Plan. Employers taking part in the Plan have agreed to be subject to Pension Fund's rules.

Bambace employed members of Teamsters Local Union 812. Pursuant to a collective bargaining agreement with the union, the debtor participated in and was required to make contributions to the Pension Fund. Before the filing of the petition in bankruptcy, Bambace failed to make several payments due and owing to Pension Fund under the collective bargaining agreement and Plan rules.

On July 2, 1991, Pension Fund filed a proof of claim with the court for $1,069.85, plus interest from the date of accrual, which represents the outstanding employee benefit contributions due for pre-petition services. Pension Fund's claim is entitled to priority status under 11 U.S.C. § 507(a)(4) because it represents services rendered within 180 days before the petition date and it does not exceed the $2,000.00 limit for each employee. The debtor did not object to the claim and therefore, it is deemed allowed pursuant to 11 U.S.C. § 502(a). Moreover, distribution has already been made on the claim.

Bambace continued to make post-petition payments to Pension Fund on behalf of its employees covered by the collective bargaining agreement until March 29, 1991, when the debtor ceased contributing to Pension Fund. Pension Fund alleges that Bambace's failure to make payments required by the Plan triggered employer withdrawal liability, which arises under 29 U.S.C. § 1383 when an employer permanently ceases to have an obligation to contribute to a multiemployer plan or when an employer stops all covered operations under the plan. On April 18, 1991, Pension Fund filed in the United States District Court for the Northern District of New York, a complaint in which it primarily sought an injunction requiring Bambace to produce all relevant books and records for the purpose of an audit. The audit was necessary for the Pension Fund to determine whether Bambace was making the contributions required by the Plan. The district court dismissed the complaint because it violated the automatic stay provision of 11 U.S.C. § 362(a)(1) which a debtor invokes upon the filing of its bankruptcy petition. Bambace has refused to allow Pension Fund to conduct an audit.

Pension Fund advised principals of Bambace, by correspondence dated June 10, 1991, that, as a result of the cessation of required payments, employer withdrawal liability was likely and that Pension Fund would calculate the amount due, if any. Withdrawal liability is an extension of the future pension contributions owed by a withdrawn employer. This liability is mandated because the Pension Fund is required to provide pension benefits to employees of a withdrawn employer even though the employer ceases contributing to the Plan. The payment of withdrawal liability insures that the Pension Fund is adequately endowed.

Pension Fund also forwarded to the debtor a copy of a letter to its accountants dated June 14, 1991 requesting calculation of Bambace's withdrawal liability. By letter dated August 28, 1991, the same day that Bambace's plan of reorganization was confirmed by this court, Pension Fund notified Bambace that it was subject to withdrawal liability in the amount of $36,032.00. Pension Fund also advised Bambace that it would file an Amended Proof of Claim with this court for $37,101.85, representing $36,-

032.00 for the alleged withdrawal liability and $1,069.85 for the outstanding contributions previously claimed. On September 6, 1991, Pension Fund filed its Amended Proof of Claim dated August 19, 1991, which reflects the debtor's withdrawal liability.

Bambace objects to Pension Fund's Amended Proof of Claim. The debtor asserts that the Amended Proof of Claim is invalid because it does not relate to Pension Fund's original claim of July 2, 1991 for outstanding contributions, but rather, represents an entirely new claim for withdrawal liability. The additional claim for withdrawal liability, the debtor argues, is untimely as it was filed after the August 15, 1991 bar date.

Pension Fund opposes Bambace's objection and asserts that its claim for withdrawal liability is indeed valid for two reasons. First, Pension Fund asserts that the claim for withdrawal liability is timely because it notified the debtor several times by letter before the bar date that the debtor had incurred withdrawal liability. These notifications, Pension Fund maintains, should be recognized as a legitimate informal proof of claim because they apprised Bambace of a claim for withdrawal liability. Pension Fund argues that its subsequent filing of the Amended Proof of Claim on September 6, 1991 perfected the informal proof of claim.

Second, Pension Fund asserts that even if the letters do not constitute an informal proof of claim, its Amended Proof of Claim for withdrawal liability should be allowed as a proper amendment to its previously filed claim for delinquent payments to the Plan. Pension Fund reasons that the claims are related and Bambace is not unduly prejudiced by the amendment. Pension Fund contends that the claims have a direct causal relationship to each other because they arose out of the same underlying facts, namely, Bambace's failure to contribute to the Plan. Bambace is not harmed by the amendment, Pension Fund argues, because the debtor was informed of the withdrawal liability claim on two separate occasions prior to the bar date.

Furthermore, Pension Fund alleges that the debtor has engaged in dilatory tactics by refusing to produce its books and records and allow Pension Fund to conduct an audit, despite the debtor's obligation to do so under Pension Fund rules. This refusal, Pension Fund contends, has made it impossible to calculate accurately withdrawal liability and prevented Pension Fund from filing the claim before the bar date. Pension Fund argues that if its withdrawal liability claim was expunged, the debtor would unfairly benefit from its unjust refusal to produce its corporate books and records. Additionally, Pension Fund seeks the production of the debtor's books and records under Bankruptcy Rule 2004.

## DISCUSSION

### *Proposed Informal Proof of Claim*

Pension Fund's letters dated July 10 and 14, 1991 can not be considered informal proofs of claim which were perfected by the Amended Proof of Claim filed on September 6, 1991. A document evidencing the existence, nature and amount of a claim against the estate in bankruptcy which has timely become a part of the judicial record, may be amended by a properly filed formal proof of claim. *Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.)*, 767 F.2d 814, 819 (11th Cir.1985) ("To constitute an informal proof of claim, the document must apprise the court of the existence, nature, and amount of the claim." (citations omitted)), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); *In re E.C.W., Inc.*, 107 B.R. 451, 453 (Bankr.D.Conn. 1989); *In re Pabis*, 62 B.R. 633, 636 (Bankr.D.Conn.1986); *In re W.T. Grant Co.*, 53 B.R. 417, 420–21 (Bankr. S.D.N.Y.1985). A letter to the president of the debtor corporation, standing alone, is not a valid informal proof of claim. *See In re International Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985); *In re A.H. Robins Co., Inc.*, 118 B.R. 436 (Bankr.E.D.Va. 1990). In considering whether a document constitutes an informal proof of claim, this court recently stated that

There must be something in the bankruptcy court's records to reflect the informal proof of claim because Bankruptcy Rule 5005(a) expressly states that proofs of claim and other papers required to be filed "shall be filed with the clerk in the district where the case under the Code is pending."

*In re Thomson McKinnon, Inc.*, 130 B.R. 721, 723 (Bankr.S.D.N.Y.1991). At no time prior to the claims bar date did Pension Fund advise the court of its withdrawal liability claim by filing a document stating the existence, nature, and extent of the claim with the clerk of the court. Thus, the letters in question do not constitute an informal proof of claim under Federal Rule of Bankruptcy Procedure 5005(a) and applicable case law.

There is an additional ground for rejecting Pension Fund's argument that its letters constitute an informal proof of claim which were perfected by its subsequent Amended Proof of Claim. It is well settled that to constitute an informal proof of claim, a document must explicitly state the claimant's intent to hold the debtor liable as well as articulate the existence, nature, and amount of the claim. *The Charter Co. v. Dioxin Claimants. (In re the Charter Co.)*, 876 F.2d 861, 864 (11th Cir.1989); *Anderson–Walker Industries, Inc. v. Lafayette Metals, Inc. (In re Anderson–Walker Industries, Inc.)* 798 F.2d 1285, 1287 (9th Cir.1986); *Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurants, Inc.)*, 754 F.2d 811, 815 (9th Cir. 1985); *County of Napa v. Franciscan Vineyards, Inc. (In re Franciscan Vineyards, Inc.)*, 597 F.2d 181, 183 (9th Cir. 1979) *(per curiam )*, *cert. denied*, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *In re Nutri\*Bevco, Inc.*, 117 B.R. 771, 789 (Bankr.S.D.N.Y.1990). In this proceeding, Pension Fund's June 10, 1991 letter to the principals of Bambace reads in relevant part as follows:

Therefore, under the Multi Employer [sic] Pension Plan Amendments Act of 1980, there *may* be an Employer Withdrawal Liability.

We are in the process of determining your company's Employer Withdrawal Liability.

As soon as these calculations are completed by the Fund, we will notify you of the monies your company owes this Pension Fund, *if any.*

*Memorandum of Law in Opposition To Debtor's Motion ...*, Exhibit C (emphasis added). The copy of Pension Fund's June 14, 1991 letter to its accountant which was forwarded to the debtor is equally ambiguous. Pension Fund never stated with particularity the nature and amount of the alleged claim nor did it clearly elucidate its intent to hold the debtor liable. Therefore, the letters in issue do not qualify as an informal proof of claim.

*Proposed Formal Claim Amendment*

▮ Pension Fund's Amended Proof of Claim reflecting Bambace's alleged withdrawal liability does not amend its timely filed claim for outstanding contributions. Timely filed proofs of claims may be amended according to the following guidelines:

Thus in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *See Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228, 230 (6th Cir.1947); *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir.1930). Still, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment.

*In re International Horizons*, 751 F.2d at 1216 (citations omitted). Amendments are liberally allowed if the amendment does not seek recovery on a new or different claim and does not impose undo hardship on any party. *Sambo's Restaurants*, 754 F.2d at 816; *In re McLean Industries, Inc.*, 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990); *In re Robert Stone Cut Off Equipment, Inc.*, 98 B.R. 158 (Bankr.N.D.N.Y.1989); *W.T. Grant*, 53 B.R. at 420; *In re Hertz*, 38 B.R. 215, 218 (Bankr.S.D.N.Y.1984). The pro-

posed amendment must meet both aspects of this test.

Pension Fund's Amended Proof of Claim does not directly relate to its timely filed claim but represents a new claim altogether. Although Pension Fund's original claim for outstanding contributions and the subsequent amendment reflecting withdrawal liability arise out of similar factual circumstances, namely, the debtor's failure to comply with its obligations under the benefits Plan, the claims are separate and distinct. *See In re Metro Transp. Co.*, 117 B.R. 143, 148 (Bankr.E.D.Pa.1990); *In re Synergetics, Inc.*, 115 B.R. 361, 362 (Bankr. N.D.Fla.1990); *In re Fesco Plastics Corp., Inc.*, 97 B.R. 961, 962 (C.D.Ill.1989); *W.T. Grant Co.*, 53 B.R. at 422. The initial claim is based upon Pension Fund's delinquent pre-petition payments while the amended claim for withdrawal liability arose post-petition because of Bambace's permanent withdrawal from the benefit Plan pursuant to 29 U.S.C. § 1383. Pension Fund's Amended Proof of Claim is not a modification of its original claim but rather is an untimely attempt to interpose a new claim. Therefore, the Amended Proof of Claim cannot be allowed.

■ Furthermore, allowing Pension Fund's Amended Proof of Claim would be unduly prejudicial to the parties involved in this Chapter 11 case. This court approved a confirmation plan on August 28, 1991 pursuant to 11 U.S.C. §§ 1128 and 1129. The plan had been accepted by the requisite creditors. Bambace is reorganizing and has already made distribution under the plan. Pension Fund was aware that Bambace was liable for withdrawal liability well before the August 15, 1991 bar date yet neglected to file any document evidencing that claim with this court. The debtor's plan of reorganization would have been substantially affected by Pension Fund's withdrawal liability claim. If Pension Fund's Amended Proof of Claim were allowed, the debtor and creditors who have accepted and relied upon the confirmed Chapter 11 reorganization plan and the proceeds available to fund the plan would be unfairly prejudiced. Accordingly, this court will not allow Pension Fund's Amended Proof of Claim. *See In re C.P.M. Const.*, 124 B.R. 335, 338 (Bankr. D.N.M.1991).

■ Pension Fund blames its failure to file a timely claim for withdrawal liability on Bambace's refusal to produce its books and records which were necessary to calculate the claim in violation of its obligations under Pension Fund rules and various labor statutes. In this case, Bambace's refusal was justified under the automatic stay provision of 11 U.S.C. § 362(a) which was implicated upon the filing of the bankruptcy petition. Pension Fund could have moved for relief in this court under 11 U.S.C. § 362(d) but neglected to make such a motion. Moreover, Pension Fund could have filed with this court a proof of claim reflecting the withdrawal liability even though it could not specify the amount of the claim.

Pension Fund's motion to compel production of Bambace's books and records under Federal Rule of Bankruptcy Procedure 2004(c) is denied. Pension Fund seeks production of these documents to conduct an audit to determine Bambace's withdrawal liability. Because this court will not allow Pension Fund's Amended Proof of Claim reflecting withdrawal liability, Pension Fund may not examine Bambace's books for purposes of calculating withdrawal liability, an academic point.

■ Moreover, a 2004 examination may be used to obtain information relating to "the acts, conduct, or property or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's right to a discharge." Fed.R.Bankr.P. 2004. Here, Bambace's plan of reorganization has been confirmed. All property of the estate in bankruptcy has vested in Bambace pursuant to 11 U.S.C. § 1141(b) free of all claims except those which are provided for under the plan. Thus, because there no longer exists any property of the estate for discovery purposes, Rule 2004 is not the appropriate vehicle for Pension Fund's proposed discovery. Rather, the Federal

Rules of Civil Procedure should be followed.

### CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. Pension Fund's correspondence with the debtor does not constitute an informal proof of claim for withdrawal liability and therefore, cannot be amended.

3. Pension Fund's Amended Proof of Claim reflecting withdrawal liability is not a proper amendment to its original claim for outstanding payments because the claims are not directly related to each other and allowing the Amended Proof of Claim would unfairly prejudice Bambace and its creditors.

4. Pension Fund's motion to compel discovery under Federal Rule of Bankruptcy Procedure 2004(c) is denied.

SETTLE ORDER in accordance with the foregoing.