In re VILLAGE APARTMENT
ASSOCIATES.

SPECIALTY INVESTMENT
CORPORATION, Plaintiff,

v.

VILLAGE APARTMENT ASSOCIATES,
Defendant.

Bankruptcy No. B79–958A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Feb. 19, 1981.

James M. McDaniel, Decatur, Ga., for Specialty Inv. Corp.

Malcolm D. Young, Peterson, Young, Self & Asselin, Atlanta, Ga., for Village Apartment Ass'n.

Michael Mears, McCurdy & Candler, Decatur, Ga., for Decatur Fed. Sav. & Loan.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

Plaintiff Specialty Investment Corporation filed a "Motion of Specialty Investment Corporation, a Creditor, for a Determination by the Court of Certain Monies Held in Escrow" in the above-styled case. This matter came on regularly to be heard before the Court on May 29, 1980. After considering the testimony and evidence adduced at trial and the briefs submitted by the parties, and having reviewed the pleadings on file, the Court makes the following decision.

## FINDINGS OF FACT

1. Village Apartments Associates, (hereinafter referred to as "Debtor"), purchased an apartment complex located in Douglas County, Georgia and known as the Village Apartments from Specialty Investment Corporation, (hereinafter referred to as "Specialty") on September 29, 1976.

2. In connection with the purchase of the Village Apartments Debtor executed a real estate note for the purchase price and a security deed to secure the note.

3. The deed to secure debt executed by Debtor grants Specialty the option to accelerate the debt evidenced by the real estate note in the event Debtor becomes in default.

4. The deed to secure debt executed by Debtor contains a provision under which Specialty may recover 10% of the aggregate amount of the debt due on the real estate note for attorney's fees in the event Debtor becomes in default.

5. Under the terms of the deed to secure debt, Debtor was required to keep the subject property in good repair, to pay all taxes and assessments that may be liens upon the property and to keep the improvements on the property fully insured.

6. As of March 5, 1979 Debtor had not placed funds in escrow for payment of city and county taxes and for payment of insurance premiums and had allowed some of the apartments in the complex to fall into disrepair.

7. Notice of default and election to proceed under the assignment of rents provision of the security deed was sent to Debtor by a letter from counsel for Specialty dated December 28, 1978.

8. There is no evidence that Specialty exercised the option to accelerate the debt owed by Debtor.

9. Under the sales contract between Debtor and Specialty, the seller was required to pay the State of Georgia transfer tax, any loan transfer fees and its recording costs.

10. At the closing of the sale transaction between Debtor and Specialty, Specialty paid Debtor approximately $12,000.00 for title and closing costs. Part of the sum was to be used to pay intangible recording taxes assessed in connection with the recording of Specialty's security deed.

11. No part of the $12,000.00 paid to Debtor was applied to the payment of the intangible recording tax. Due to Debtor's failure to make this payment, Specialty paid $5,701.50 for the intangible recording tax.

12. Debtor filed a petition under Chapter XII of the Bankruptcy Act on April 2, 1979.

13. A first deed to secure debt on the Village Apartments is held by Decatur Federal Savings and Loan, (hereinafter referred to as "Decatur Federal").

14. Specialty holds a wrap-around second deed to secure debt on the Village Apartments.

15. On March 17, 1980 an order was entered which confirmed the plan of arrangement, as modified, filed by Decatur Federal. This plan provides for the sale of the Village Apartments. Unsecured creditors will receive full payment of their claims. Decatur Federal will receive monthly payments of interest and principal pursuant to a loan assumption agreement executed by the proposed purchaser of the subject property. Specialty will also receive monthly payments of interest and principal pursuant to a loan assumption agreement executed by the proposed purchaser. The wrap-around mortgage held by Specialty is to be converted to a standard second mortgage subject to the mortgage held by Decatur Federal. The modified plan provides that Specialty will receive

accrued interest owing without interest or penalty at closing.

16. The provision in the modified plan concerning interest payments to Specialty was not acceptable to Specialty. Thereafter the provision was modified to allow Specialty to receive interest owing along with any interest or penalty allowable under the terms of the contract between Specialty and Debtor. This modification was approved by court order entered March 17, 1980.

17. A closing of the sale of this property was scheduled for March 28, 1980. At the closing Specialty refused to sign the documents necessary for the implementation of the plan modifications unless and until it was paid $37,154.92 allegedly due Specialty.

18. Specialty contends that Debtor owes Specialty the sum of $31,453.62 under the provision of the security deed allowing Specialty to recover 10% of the aggregate amount of the debt due if Debtor becomes in default. This claim was reduced to $28,396.90 at the hearing of May 29, 1980. Specialty also claims that Debtor owes Specialty $5,701.50 for intangible recording taxes.

20. The sum of $37,154.92 was placed into escrow pending a resolution of this matter by the Court.

21. On May 2, 1980 Specialty filed a "Motion of Specialty Investment Corporation, a Creditor, for a Determination by the Court of Certain Monies Held in Escrow". This matter was heard by the Court on May 29, 1979.

22. Specialty has also presented a motion to the Court for compensation in the amount of $5,007.53 for attorney's fees.

### APPLICABLE LAW

I. *Admissibility of Certain Evidence*

At the hearing Specialty tendered into evidence a number of exhibits many of which were admitted subject to a ruling on certain objections to their admissibility. Prior to reaching the merits of the case, the Court will rule on the admissibility of these exhibits.

Specialty's Exhibit # 3 is a copy of the real estate note dated as of November 1, 1976 given by Debtor to Specialty for the purchase price of the Village Apartments. This document was admitted into evidence subject to a ruling on relevancy. Debtor waived its objection to the admissibility of this document. However the objection to admissibility of Decatur Federal was not withdrawn.

■ Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 401 of the Federal Rules of Evidence. The real estate note proves the existence of a debt owed by Debtor to Specialty and secured by a security deed. The existence of this debt is relevant to the determination of whether Specialty is entitled to recover attorney's fees pursuant to a provision in a security deed which secures this debt. Accordingly, the Court rules Specialty's Exhibit # 3 admissible.

Specialty's Exhibit # 4 is a copy of the security deed executed by Debtor to secure the debt evidenced by the real estate note. This document was admitted subject to a ruling on relevancy. Debtor waived its objection to the admissibility of this evidence. Decatur Federal's objection to admissibility was not withdrawn.

The security deed contains the provisions defining the actions and omissions which constitute default, granting Specialty the right to accelerate the debt on Debtor's default and granting Specialty the right to collect attorney's fees equal to 10% of the aggregate amount of the debt due in the event of Debtor's default. In order to determine whether Specialty is entitled to the contractual attorney's fees, the Court must know the terms of this security deed. Therefore the Court rules Specialty's Exhibit # 4 admissible.

Specialty's Exhibit # 5 is a copy of a letter dated February 16, 1978 purportedly from Allan E. Rauber to Debtor. The letter is typed on stationery of the law firm McCurdy & Candler. Mr. Rauber's signa-ture does not appear above his typed name. The letter is written on behalf of Specialty and gives notice of alleged defaults in payments on the real estate note. This letter was admitted subject to a ruling on proper foundation and on relevancy and materiality.

The letter was identified by witness Hosea C. Batten, secretary-treasurer of Specialty, who merely stated that he had seen the letter before.

Mr. Mike Mears, an attorney with McCurdy & Candler testified that he had no reason to doubt that the letter came from McCurdy & Candler, however he had no personal knowledge with regard to its authenticity.

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Rule 901(a) of the Federal Rules of Evidence. Authentication may be accomplished through the testimony of a witness with knowledge that a matter is what it is claimed to be. Rule 901(b)(1) of the Federal Rules of Evidence.

■ Neither Mr. Batten nor Mr. Mears has personal knowledge that the letter dated February 16, 1978 was written by Mr. Rauber and sent to Debtor. The Court concludes that no proper foundation has been laid for the introduction of the letter into evidence and rules that Specialty's Exhibit # 5 is inadmissible for lack of proper foundation. It is not necessary to address the issues of relevancy and materiality.

Specialty's Exhibit # 8 is a letter dated March 10, 1979 from J. J. Fowler of Specialty to Joe W. Kilpatrick of E.I.T. Corporation, a general partner of Debtor. This letter was admitted on the issue of notice of alleged defaults subject to a ruling on proper foundation.

The letter was identified by Mr. Batten who merely stated that he had seen the letter before. There is nothing in the record establishing that Mr. Batten has person-

al knowledge of the authenticity of this letter. Therefore the Court rules Specialty's Exhibit # 8 inadmissible for lack of proper foundation.

Specialty's Exhibit # 9 is a copy of the modification of the real estate note executed by Debtor. This document was admitted subject to a ruling on relevancy. The modification tends to prove facts pertaining to the existence of the debt by Debtor to Specialty and to the terms and conditions of the real estate note. The existence of the debt evidenced by the real estate note and the terms and agreements thereof are relevant to the determination of whether Specialty is entitled to attorney's fees. Accordingly, the Court rules Specialty's Exhibit # 9 admissible.

Specialty's Exhibit # 10 is a modification of Specialty's deed to secure debt executed by Debtor. This modification was made on the date the real estate note was modified. The document was admitted subject to a ruling on relevancy. This Court has already ruled the copy of the original security deed relevant and therefore admissible. For the reasons stated with regard to the admissibility of the security deed, this Court rules Specialty's Exhibit # 10 admissible.

Specialty's Exhibit # 11 is a copy of a "Settlement Statement" dated March 28, 1980 for the sale of the Village Apartments by Debtor to Green Property Corporation. This document was admitted subject to a ruling on relevancy. The Settlement Statement does not tend to prove or disprove any facts which are of consequence to the issues now before the Court. Accordingly, the Court rules Specialty's Exhibit # 11 inadmissible.

## II. *Contractual Attorney's Fees*

Specialty argues that it is entitled to recover attorney's fees as a penalty pursuant to the provision in the security deed which allows Specialty to recover 10% of the aggregate amount of the debt due if Debtor defaults. Debtor contends that the provision for attorney's fees is not a penalty and therefore the fees are not recoverable under the plan of arrangement.

■ Under Georgia law contractual provisions for attorney's fees are not for the benefit of attorneys; they are in the nature of liquidated damages which inure to the benefit of the holder of the note. *Rylee v. Bank of Statham*, 7 Ga.App. 489, 67 S.E. 383 (1910). Because the purpose of the attorney's fees provision is the reimbursement of the holder of the note for damages suffered as a result of the debtor's breach, the liability incurred for these fees is a penalty. Therefore, if the other requirements pertaining to the enforcement of the attorney's fees provision have been met, Specialty may be able to recover the amount requested.

■ Contractual arrangements for the payment of attorney's fees such as the one in the security deed executed by Debtor are valid and enforceable under Georgia law. Ga.Code Ann. § 20–506. However certain conditions must be met before the provision may be enforced. The conditions precedent to recovery of contractual attorney's fees are: (1) the contract must include an obligation to pay attorney's fees; (2) the debt must have matured; (3) notice must be given to the debtor informing him that he has ten days within receipt to pay the debt in order to avoid attorney's fees; · (4) the ten-day period must expire without payment of principal and interest in full; and (5) the debt must be collected by or through an attorney-at-law. *General Electric Credit Corporation of Georgia v. Brooks*, 242 Ga. 109, 249 S.E.2d 596 (1978); *Adair Realty and Loan Company v. Williams Brothers Lumber Company*, 112 Ga.App. 16, 143 S.E.2d 577 (1965). All of these conditions must be met before a creditor may recover contractual attorney's fees. *Holt v. Rickett*, 143 Ga.App. 337, 238 S.E.2d 706 (1977).

■ From reviewing the evidence in the case the Court concludes that all of the required conditions for recovery of attorney's fees have not been met in the instant case. As of March 5, 1979 Debtor was in default on the performance of its obligations under the security deed. The undisputed testimony of Mr. Batten, secretary-

treasurer of Specialty, established that Debtor failed to escrow funds for the payment of city and county taxes and for payment of insurance premiums. Additionally, Debtor had allowed some of the apartments situated on the real property to fall into disrepair. The security deed requires Debtor to pay property taxes and insurance premiums and to maintain the apartment buildings in good repair. By the terms of the security deed, failure to perform these covenants constitutes a default. Specialty would have been within its rights to declare a default and accelerate the debt owed by Debtor. Although Debtor was notified of its default in letters dated December 28, 1978 and March 5, 1979, there is no evidence in the record that the debt was accelerated. Therefore this Court cannot find that the debt owed by Debtor to Specialty is mature.

■ Before contractual attorney's fees may be recovered the creditor must "notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from receipt of such notice to pay the principal and interest without the attorney's fees". Substantial compliance with the notice provisions of Ga.Code Ann. § 20–506(c) is sufficient to fulfill the notice requirement. *General Electric Credit Corporation of Georgia v. Brooks, supra.*

Specialty sent notice of its intention to enforce the provision of the security deed relative to attorney's fees on March 5, 1979. Although the letter substantially complies with Ga.Code Ann. § 20–506(c) in most respects, there is one instance where the letter departs from the requirements of this statutory provision. Instead of informing Debtor that attorney's fees may be avoided by the payment of principal and interest the letter states that the attorney's fees provision will be enforced "unless said defaults are cured within ten (10) days from the receipt of this notice ...". Curing a default is not the same as payment in full of principal and interest. The statement

that the provision regarding attorney's fees will be enforced unless the defaults are cured within 10 days of receipt of the notice fails to adequately inform Debtor that in order to avoid payment of attorney's fees the principal and interest must be paid in full within the required time. Therefore the Court concludes that the notice given by Specialty to Debtor was inadequate for failure to substantially comply with the provisions of Ga.Code Ann. § 20–506(c).

■ Before contractual attorney's fees may be recovered the debt must be collected by or through an attorney-at-law. *General Electric Credit Corporation of Georgia v. Brooks, supra.* Apparently it is the law that actual collection of the debt is not required. The statute simply requires that the creditor place the matter in the hands of an attorney and that the attorney subsequently take action to enforce the debt. *In Re: East Side Investors,* C80–1264A (N.D. Ga.1980). In *East Side Investors* the Court found that the initiation of a non-judicial foreclosure which was later stayed when the debtor filed for bankruptcy satisfied the collection requirement. In the instant case there is a complete absence of evidence that Specialty took steps to enforce the collection of the debt owed by Debtor. Therefore Specialty failed to prove that the debt was collected by or through an attorney-at-law.

From the foregoing the Court concludes that three of the conditions precedent to the enforcement of a contractual provision for attorney's fees are not present in this case. The maturity of the debt has not been established nor has it been proved that the debt was collected by or through an attorney-at-law. Furthermore the notice of intention to enforce the attorney's fees provision sent by Specialty to Debtor did not substantially comply with the provisions of Ga.Code Ann. § 20–506(c). Because all of the conditions precedent to recovery of attorney's fees were not fulfilled, the Court concludes that Specialty is not entitled to the $28,396.90 claimed as a penalty.

### III. *Intangible Recording Tax*

Specialty contends that Debtor owes Specialty $5,701.50 for the intangible recording

tax incurred by Specialty in connection with the recordation of its security deed. It is stipulated in the sales contract between Specialty and Debtor that payment of intangibles tax is the responsibility of the seller. However, the undisputed testimony of Mr. Hosea C. Batten established that at the closing of the sale, Specialty paid $12,-000.00 to Debtor to cover title and closing costs including costs incurred for intangible taxes. When Debtor did not pay the intangible recording tax assessed when Specialty's security deed was recorded, this cost was born by Specialty.

From reviewing the evidence the Court determines that the intangible recording tax should have been paid by the Debtor from the $12,000.00 fund transferred to Debtor at the closing. Because this was not done, Specialty has a claim against Debtor for the amount paid for this tax. However this claim does not ipso facto carry with it the right to recover the amount of the claim. This Court has confirmed a plan of arrangement for the Debtor. Section 473 of the Bankruptcy Act, 11 U.S.C. § 873 provides:

> "Upon confirmation of an arrangement—
> (1) the arrangements and its provisions shall be binding upon the debtor, upon any person issuing securities or acquiring property under the arrangement, and upon all creditors of the debtor, whether or not they are affected by the arrangement or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed and are allowable; . . ."

This section is interpreted in 9 *Collier on Bankruptcy* (14th Edition) ¶ 9.08. There it is said:

> "The binding effect given by § 473(1) to a plan and its provisions means that those provisions are conclusively determined to create adjudicated rights and liabilities which are not subject to collateral attack."

*Id.* at 1148.

Unless there is some provision in the plan of arrangement for the payment of the claim in question; Specialty may not recover the $5,701.50.

The plan of arrangement confirmed by this Court provides for the payment of the claim of Specialty which is secured by a wrap around mortgage. It is the purchase price of the Village Apartments that is secured by the wrap around mortgage. The claim referred to in the plan does not include the $12,000.00 paid by specialty to Debtor to cover title and closing costs. Because the plan makes no provision for the reimbursement of sums paid by Specialty for intangible recording taxes, Specialty is not entitled to recover the $5,701.50 prayed for.

## IV. *Attorney's Fees*

Specialty filed a motion to recover attorney's fees in the amount of $5,007.53 from the estate. It is alleged that the services of counsel for Specialty conferred certain benefits on the estate. These benefits consist of Specialty's forbearance from insisting on a hearing on its complaint for turnover and Specialty's acceptance of the modified plan of arrangement.

The fees that may be awarded by the bankruptcy court are limited to those expressly authorized by the Bankruptcy Act. *Berry v. Root*, 148 F.2d 945 (5th Cir. 1945) cert. denied 326 U.S. 755, 66 S.Ct. 91, 90 L.Ed. 453 (1945). A creditor's attorney may be compensated from the estate for services rendered in connection with the recovery of assets for the bankrupt estate; the successful opposition to or revocation or setting aside of a discharge, wage earner plan or arrangement; the adducement of evidence resulting in the conviction of an offense or the administration of the estate. Section 64(a)(1) and (3); 11 U.S.C. § 104(a)(1) and (3); 3A *Collier on Bankruptcy* (14th Edition) ¶ 62.29[2.1], p. 1567.

It is clear that the services for which Specialty contends it is entitled to compensation are not the kind of services

which are compensable under the Bankruptcy Act. No extraordinary power of imagination is required to envision the impediment to rehabilitation that would be caused if the estate were required to compensate the attorney's for all creditors who accepted a plan of arrangement. Furthermore it is incomprehensible that a creditor should be able to recover attorney's fees for saving the estate an expense which emanates from the creditor's own actions. The Court concludes that Specialty is not entitled to compensation from the estate for attorney's fees.

## CONCLUSIONS OF LAW

1. The provision in the security deed regarding the collection of attorney's fees in the event the debtor defaults is a penalty provision.

2. Because all of the conditions precedent to the enforcement of a contractual provision for attorney's fees are not present in this case Specialty is not entitled to recover the $28,396.90 claimed as a penalty.

3. The plan of arrangement confirmed by this Court does not provide for the payment of Specialty's claim for intangible recording taxes. Therefore Specialty may not recover the $5,701.50 paid by Specialty for intangible recording taxes.

4. The services rendered by counsel for Specialty are not compensable under the Bankruptcy Act.

It is therefore

ORDERED that Specialty's claim for a penalty in the amount of $28,396.90 shall be and same is hereby disallowed; and it is further

ORDERED that Specialty's claim for reimbursement of intangible taxes in the amount of $5,701.50 shall be and same is hereby disallowed; and it is further

ORDERED that Specialty's motion for compensation for attorney's fees shall be and same is hereby denied; and it is further

ORDERED that the $37,154.92 presently held in escrow shall be turned over to Debtor.