**In re RIDGEWOOD APARTMENTS OF DEKALB COUNTY, LTD., Debtor.**

**Bankruptcy No. 2–92–08638.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Aug. 15, 1994.

Stephen C. Greenberg, Holt, Ney, Zatcoff & Wasserman, Atlanta, GA, for Federal Nat. Mortgage Ass'n.

Richard G. Hardy, Ulmer & Berne, Cleveland, OH, for debtor.

Carol G. Stebbins, Cardinal Realty Services, Inc., Reynoldsburg, OH, for Cardinal Realty Services, Inc.

### ORDER ON OBJECTION TO AMENDED PROOF OF CLAIM OF FEDERAL NATIONAL MORTGAGE ASSOCIATION

BARBARA J. SELLERS, Bankruptcy Judge.

The matter before the Court is the Objection filed by Debtor, Ridgewood Apartments of DeKalb County, Limited ("Debtor") and Cardinal Realty Services, Inc. ("Cardinal"), the Debtor's general partner, to the Amended Proof of Claim of Federal National Mortgage Association ("Fannie Mae"). Fannie Mae's original Proof of Claim ("Original Claim") was timely filed on March 5, 1993. The Amended Proof of Claim ("Amended Claim") was filed May 16, 1994.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### I. Findings of Fact

On November 24, 1992, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. March 29, 1993 was set as the original deadline for filing proofs of claim; however, that date was extended by Court order until May 20, 1993. Fannie Mae filed its Original Claim on March 5, 1993, in the amount of $2,054,922.36. That amount includes a prepayment premium of $263,-275.81. The Original Claim does not include any amounts for attorney fees incurred by Fannie Mae.

On May 16, 1994, Fannie Mae filed its Amended Claim, including a demand for "Reasonable Attorneys' Fees (O.C.G.A. § 13–1–11)" in the amount of $178,667.61. Fannie Mae contends that it satisfied all conditions required to assess the statutory attorney fees in accordance with § 13–1–11 of the Official Code of Georgia Annotated ("O.C.G.A."), and that such fees are allowable pursuant to the amendment to its timely Original Claim. Fannie Mae also contends that the contractual term providing for a "prepayment premium" is supported by O.C.G.A. § 13–6–7, and that the obligation was triggered by Fannie Mae's acceleration of the Debtor's obligation under the Multifamily Note dated October 19, 1988 ("the Note").

The Court is called upon to rule on the applicability and enforceability of the statutory attorney fees and prepayment premium obligations. Fannie Mae's Amended Proof of

Claim was filed on the eve of the hearings on confirmation of the Plan of Reorganization jointly proposed by Debtor and Cardinal ("The Plan") and Fannie Mae's Motion for Relief From Automatic Stay ("The Motion") (set for hearing on the same date). The Court must render a ruling on the claim objection prior to considering either confirmation of The Plan or The Motion. Such determination is critical for determining feasibility of The Plan in connection with confirmation, and for deciding whether the Debtor's real property is necessary to an effective reorganization that is in prospect in connection with The Motion.

## II. *Conclusions of Law*

### A. FANNIE MAE'S ENTITLEMENT TO CLAIM ATTORNEY FEES.

■ Fannie Mae's Original Claim made no reference to attorney fees under the contract or to statutory attorney fees under O.C.G.A. § 13–1–11. The Debtor and Cardinal assert that Fannie Mae's late-filed claim is not a proper amendment of its timely filed claim because the amendment sets forth a new cause of action previously known to Fannie Mae, but omitted from its Original Claim. Fannie Mae counters this argument by asserting that the Debtor had received actual notice of Fannie Mae's intent to seek "reasonable attorneys' fees" on October 16, 1992 through a notice of acceleration, collection and right to redeem.

Before reaching the substantive issue of Fannie Mae's entitlement to statutory attorney fees, the Court must determine if the Amended Claim is an amendment permissible under procedural rules, or an attempt to assert a new cause of action after the claims bar date has passed. If the Amended Claim is proper, it constitutes *prima facie* evidence of the validity and amount of the claim. Bankruptcy Rule 3001(f). If the Amended Claim is not a proper amendment to the Original Claim, the amendment may be disallowed on that procedural basis.

■ Both parties refer the Court to the "two-pronged" test set forth in *In re McLean Industries, Inc.,* 121 B.R. 704 (Bankr. S.D.N.Y.1990). Under *McLean,* an amend-

ment is allowed only if: (1) the court determines that the amendment is reasonably related to a timely-filed claim and is not a veiled attempt to file a new claim; and (2) under an equitable analysis, the court finds that granting the amendment is fair and imposes no undue hardship on a party. *McLean Industries,* 121 B.R. at 708.

■ The Court finds that Fannie Mae has satisfied the first prong of the test set forth in *McLean,* as set forth earlier in *In re G.L. Miller & Co.,* 45 F.2d 115, 116 (2d Cir.1930). The addition of attorney fees in the Amended Claim both describes the Original Claim with greater particularity and pleads a new theory of recovery on the facts set forth in the Original Claim. *Miller,* 45 F.2d at 116. Therefore, the Amended Claim relates to and merely supplements the Original Claim.

The Note attached to Fannie Mae's Original Claim states, in relevant part,

> In the event of any default in the payment of this Note, and if the same is referred to an attorney at law for collection or any action at law or in equity is brought with respect hereto, the undersigned shall pay the holder hereof all expenses and costs, including, but not limited to, reasonable attorney's fees ... This Note shall be governed by the law of the jurisdiction in which the Property subject to the Deed to Secure Debt is located.

There is no question that the relevant property is located in Georgia and Georgia law thereby applies. It also is undisputed that Georgia law defines as reasonable attorney fees a percentage of the obligation consistent with the claim filed by Fannie Mae. As such, the Amended Claim both describes the Original Claim with greater particularity and pleads a new theory of recovery on the facts set forth in the Original Claim.

■ The second part of the *"Miller* test" entails an equitable analysis, whereby granting the amendment must be fair and impose no undue hardship on a party. Absent overriding equitable concerns, an amendment will be granted liberally if the first part of the *"Miller* test" is satisfied. *McLean,* 121 B.R. at 708. The Court previously has found that Fannie Mae's Amended Claim does not set

forth a new claim, but adds to an earlier claim and arises out of the same occurrence or transaction as the timely-filed Original Claim. *See United States v. International Horizons, Inc. (In re Int'l Horizons, Inc.),* 751 F.2d 1213, 1216 (11th Cir.1985). Even with such a finding, however, the Court must conduct an equitable analysis to assure that granting the amendment is fair and imposes no undue hardship on a party.

The factors to be considered in balancing the equities include:

(1) undue prejudice to an opposing party;

(2) bad faith or dilatory behavior on the part of the claimant;

(3) whether other creditors would receive a windfall if the amendment was not allowed;

(4) whether other claimants might be harmed or prejudiced; and

(5) the justification for the inability to file the amended claim at the time of the original claim.

*McLean,* 121 B.R. at 708 (citations omitted).

With respect to undue prejudice to the opposing party, the Court finds that the last-minute filing of the amendment was prejudicial to the Debtor and Cardinal, inasmuch as The Plan projections were made without any indication from Fannie Mae that it would be asserting a statutory attorney fees claim. Although prejudicial, the Court does not find "undue prejudice."

The Debtor should have been aware of the potential attorney fees claim from the ten-day notice sent by Fannie Mae prior to the bankruptcy filing. The Debtor did not file any objection to the prepayment penalty contained in the Original Claim until shortly before the confirmation hearing on its Plan and did not take the prepayment penalty amount into account when making Plan projections. Therefore, the Court does not find that the Debtor relied on Fannie Mae's Original Claim in constructing its Plan. That lack of reliance probably also would have extended to the attorney fees in the Amended Claim had the Amended Claim been filed at an earlier date. The Plan was constructed based on the Debtor's assessment of its debt to Fannie Mae and not upon amounts in Fannie Mae's claims to which the Debtor objected.

With respect to the issue of bad faith or dilatory behavior by Fannie Mae, the Court finds that the timing of the amendment (on the eve of the confirmation hearing) was a strategic decision by Fannie Mae to make the Debtor's efforts to confirm its Plan less likely to succeed. Such action borders on bad faith and appears to be a procedural maneuver which is not within the Court's assessment of the bounds of fair play.

The potential for other creditors to receive a windfall if the Amended Claim is not allowed does not exist, however. Fannie Mae is indisputably the most significant secured and unsecured creditor in this case. The Debtor's other nonrelated creditors are proposed to be paid in full, primarily from funds in an investment account. Disallowance of the Amended Claim will not improve that treatment.

With respect to harm or prejudice to other claimants, however, allowance of the Amended Claim could result in the Debtor's inability to propose a feasible plan of reorganization over Fannie Mae's dissent. As a result, other claimants, especially administrative claimants, may be harmed or prejudiced by allowance of the Amended Claim.

Fannie Mae has shown no justification for its failure to include the attorney fees in its Original Claim. Fannie Mae makes statements in its response to the Debtor's claim objection about the apparent unfamiliarity of the Debtor or Cardinal with Georgia law. Such statements are ironic in the face of Fannie Mae's blatant failure to assert any attorney fees in its Original Claim and its failure to amend its claim until such a late date that the Court might have disallowed it on procedural grounds. As stated above, the Court finds this behavior to border on bad faith. There was no justification shown for the lateness of the amendment and no reason advanced why the Debtor apparently was not informed during the plan process that the statutory attorney fees would be asserted.

The Court finds that balancing the equities is a complex task under the facts in this

matter and is a close call. However, the Court cannot conclude that there are *over-riding* equitable concerns supporting preclusion of the Amended Claim. *McLean*, 121 B.R. at 708. Therefore Fannie Mae's Amended Claim will be permitted procedurally as an amendment to the Original Claim.

■ The Court then must turn to the substantive issues raised by the Debtor and Cardinal to the Amended Claim. Specifically, the Court must decide whether the Note held by Fannie Mae and O.C.G.A. § 13–1–11 authorize the attorney fees in the Debtor's bankruptcy and whether Fannie Mae took all steps necessary to preserve its rights to such attorney fees.

The Note clearly allows Fannie Mae to collect reasonable attorney fees in the event of a default. The Note further establishes Georgia law as the controlling law. There is no dispute that the Debtor defaulted under the Note before filing its bankruptcy case. Section 13–1–11 of the Official Code of Georgia Annotated sets forth prerequisites for the validity and enforcement of obligations for attorney fees contained in notes or other evidences of indebtedness. The statute adopts a specific formula for determining reasonable attorney fees if the note or other evidence of indebtedness does not specify any percentage relationship between the amount of the obligation and the allowable attorney fees. O.C.G.A. § 13–1–11(a)(2). In order to qualify for the statutory attorney fees under O.C.G.A. § 13–1–11, the following conditions apply:

(1) The note or other evidence of indebtedness must be collected by or through an attorney after maturity;

(2) The holder of the note, after maturity of the obligation, must notify in writing the party sought to be held on the obligation that the provisions regarding the payment of attorneys' fees shall be enforced, and must provide ten (10) days from the receipt of the notice to pay the principal and interest to avoid incurring the attorney fees; and

(3) The party sought to be held on the obligation fails to pay the principal and interest before expiration of the ten day notice.

Had the Debtor not filed bankruptcy, the statutory attorney fees under O.C.G.A. § 13–1–11 would have been enforceable and Fannie Mae likely could have obtained a judgment to that effect. Prior to the time of the bankruptcy filing, Fannie Mae took all steps necessary to meet the conditions required to enforce its rights to the statutory attorney fees. On October 16, 1992, counsel for Fannie Mae forwarded a ten-day notice by letter as required by O.C.G.A. § 13–1–11(a)(3). The Debtor does not dispute receiving this letter nor does it deny that it failed to pay in full the principal and interest prior to expiration of the specified notice period. The Debtor did not commence this Chapter 11 proceeding until November 24, 1992. By that time Fannie Mae's right to the statutory attorney fees had become unconditional. Inasmuch as all necessary steps were taken, the fees became part of Fannie Mae's prepetition claim pursuant to 11 U.S.C. § 502 to the extent allowable under Georgia law and the Note.

■ The Debtor and Cardinal argue that Fannie Mae never became entitled to the statutory fees because the indebtedness was not "collected by or through an attorney after maturity." O.C.G.A. § 13–1–11(a). Citing *Boddy Enterprises, Inc. v. City of Atlanta*, 171 Ga.App. 551, 320 S.E.2d 374 (1984), the Debtor and Cardinal assert that collection of the indebtedness through a bankruptcy proceeding is analogous to collection through an eminent domain proceeding. The eminent domain "collection" in *Boddy* was held not to be within the meaning of the statutory requirement. *Boddy*, 171 Ga.App. at 553, 320 S.E.2d 374. The Debtor and Cardinal also argue that Fannie Mae's actions in opposing The Plan and filing The Motion were designed to *prevent* the collection and payment of the obligation, and the allowance of fees, therefore, would be inappropriate. *See Strickland v. Williams*, 215 Ga. 175, 109 S.E.2d 761 (1959).

■ Fannie Mae counters the Debtor's arguments by citing *Mills v. Eastside Investors (In re Eastside Investors)*, 694 F.2d 242 (11th Cir.1982). In *Eastside* the Eleventh Circuit addressed whether a secured creditor

was entitled to attorney fees under Georgia law and if such claim was a provable debt in bankruptcy under the now repealed Bankruptcy Act of 1898. *Eastside Investors,* 694 F.2d at 243.[1]

The Court has found no decisions of the Georgia Supreme Court interpreting O.C.G.A. § 13–1–11 for purposes of guiding this Court's opinion. The most recent Georgia state court ruling appears to come from the Georgia Court of Appeals in *Boddy.* In *Boddy,* the Court ruled that O.C.G.A. § 13–1–11 applies only in default situations where "an indebtedness is collected by or through an attorney after maturity". This provision was not deemed satisfied in an eminent domain proceeding. *Boddy,* 171 Ga.App. at 553, 320 S.E.2d 374. *Boddy* is distinguishable from the case at bar, however. Here, Fannie Mae has resorted to the bankruptcy court with services of counsel for collection of its obligation. The Court concurs with the Eleventh Circuit in *Eastside Investors* that such a procedure satisfies the "collected by or through an attorney" provision of O.C.G.A. § 13–1–11. *See also Specialty Investment Corporation v. Village Apartment Associates (In re Village Apartment Associates),* 9 B.R. 211 (Bankr.N.D.Ga.1981).

 There is no question that the actions of counsel for Fannie Mae have not resulted in actual collection of the debt as of this date. However, Fannie Mae certainly has placed the matter in the hands of its counsel who have taken action to enforce the debt. *Village Apartment,* 9 B.R. at 216. As such, the Court finds that the obligation was in fact "collected by or through an attorney" as required by O.C.G.A. § 13–1–11(a).[2]

 Having determined that all necessary contingencies were satisfied for invocation of the statutory attorney fees, the Court turns to the effect of the bankruptcy filing, and whether the Bankruptcy Code requires the Court to examine the asserted attorney fees for reasonableness as a matter of fact.

The cases cited to the Court for this proposition involve interpretation of 11 U.S.C. § 506. It is critical to start with the understanding, however, that Fannie Mae is an undersecured creditor in this case. Further, Fannie Mae has not made an election to be treated in accordance with 11 U.S.C. § 1111(b). Therefore, any authority to modify or disallow Fannie Mae's statutory attorney fees cannot arise under the "reasonableness" requirement in 11 U.S.C. § 506(b). As an undersecured creditor, the claim for attorney fees must only be proper under state law to become part of Fannie Mae's allowed unsecured claim. Although this concept offends the Court's sense of equity and calls into question the professionalism of demanding attorney fees far in excess of the value of actual services provided, the Court is bound by the interplay of the statutes involved.

The Debtor argues under *Joseph F. Sanson Investment Co. v. 268 Limited (In re 268 Limited),* 789 F.2d 674 (9th Cir.1986) that the bankruptcy court may render its own determination of "reasonableness" despite a contractual provision stipulating to specified attorney fees. The Court of Appeals for the Ninth Circuit stated: "We hold that § 506(b) preempts the state law governing the availability of attorney's fees as *part of a secured claim,* and that the bankruptcy court correct-

---

1. Fannie Mae sarcastically states that Debtor's Objection to the Amended Proof of Claim "conveniently ignores controlling authority on the issue of Fannie Mae's entitlement to that portion of its claim representing statutory attorneys' fees." Response to Objection to Amended Proof of Claim, p. 6. Fannie Mae apparently contends that the decision of the Eleventh Circuit in *Eastside Investors* is somehow "controlling authority" in this Court. This is simply a misstatement of the law. Inasmuch as this Court is called upon to interpret a state statute, the controlling law for this Court would be the highest state court, not the federal courts for the circuit in which the relevant state sits. *See Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d

508 (1975). Thus, while instructive, the decision of the Eleventh Circuit is not controlling authority as Fannie Mae contends.

2. Fannie Mae argues that the Note calls for payment of attorney fees if collection is merely "referred to an attorney at law for collection ..." While collection of the Note was referred to counsel, the language in the Note does not, as Fannie Mae infers, modify the statutory conditions for allowing reasonable attorney fees to be calculated pursuant to O.C.G.A. § 13–1–11. "Reference" to an attorney alone would not satisfy the statute's "collected by or through" requirement.

ly engaged in an independent reasonableness inquiry." *268 Limited,* 789 F.2d at 675 (emphasis added). This specific quote, set forth in the Debtor's Objection to Amended Proof of Claim, highlights the limitation of the Court's reasonableness inquiry. "Bankruptcy Code § 506(b) established a standard of reasonableness for the allowance of fees, costs or charges to an *oversecured* creditor under the agreement under which such claim arose." *Curtis v. Pilgrim Health and Life Ins. Co. (In re Curtis),* 83 B.R. 853, 861 (Bankr.S.D.Ga.1988). The bankruptcy court in *Curtis* inserted a "reasonableness" standard for attorney fees in accordance with § 506(b) as to an *oversecured* creditor, despite the creditor's request for the statutory attorney fees under O.C.G.A. § 13-1-11.

██ Finding no basis to assert the "reasonableness" standard of § 506 to the statutory attorney fees requested by an undersecured creditor where such fees will become part of its unsecured claim, the Court is left with no alternative but to overrule the Debtor's objection to the inclusion of statutory attorney fees pursuant to O.C.G.A. § 13-1-11, as authorized in the Note, as part of Fannie Mae's Amended Claim.

## B. THE YIELD MAINTENANCE PREMIUM.

██ Attached to the Note is an "Addendum to Multifamily Note" ("Addendum"). Paragraph 3 of the Addendum permits the Debtor to prepay the balance of the Note, subject to a "prepayment premium" as established by a formula in paragraph A1(a) of the Addendum. The Addendum further provides that the prepayment premium would be due "whether the prepayment is voluntary or involuntary (in connection with Lender's acceleration of the unpaid principal balance of the Note) or the Instrument is satisfied or released by foreclosure (whether by power of sale or judicial proceeding), deed in lieu of foreclosure or by any other means." Addendum, ¶ 3.

The Debtor argues that paragraph A3 of the Addendum merely clarifies that a prepayment penalty is due when prepayment occurs, even if such prepayment is involuntary. The Debtor notes that paragraphs A1 and A2 of the Addendum specify that the penalty is "due Lender at the time of prepay-

ment," but paragraph A3 contains no such clause. Fannie Mae takes exception to the Debtor's reading of the Addendum and states: "The language and intent ... could not be clearer—an 'involuntary pre-payment' occurs upon the lender's acceleration of the unpaid principal balance of Note." Response to Objection, pp. 10–11.

By the plain meaning of the Addendum, the Court finds that "prepayment" is required in order to invoke the prepayment penalty. Whether the prepayment is voluntary or involuntary because the lender has accelerated the unpaid principal balance of the Note, "prepayment" is the initial condition to be satisfied. Had Fannie Mae intended the penalty to be payable upon acceleration, the Addendum should have stated that specifically. There is no dispute that the Debtor has not actually prepaid the Note and The Plan being considered does not contemplate prepayment under the terms of the original Note. Accordingly, no prepayment penalty was due or owing prior to the Debtor's bankruptcy filing and such an amount is not properly part of Fannie Mae's claim.

The Court notes that the essence of a bankruptcy reorganization under Chapter 11 is to restructure debt, decelerate accelerated debts, and adjust debtor-creditor relationships. It would be anomalous for acceleration of an obligation to be construed as a prepayment which triggered the application of a penalty. Even without specific contractual language, a bankruptcy filing acts as an acceleration of all a debtor's obligations.

██ Absent actual prepayment by the Debtor, Fannie Mae's claim for a prepayment penalty could be no more than a contingent liability. Further, because the contingent claim is for interest which is not yet due at the time the bankruptcy was filed (because prepayment had not occurred), it would not be allowed to an undersecured creditor. *See* 11 U.S.C. § 502.

██ The clear purpose for a prepayment penalty is to compensate the lender for the risk that market rates of interest at the time of prepayment might be lower than the rate of the loan being prepaid. Such a provision would compensate the lender for antici-

pated interest that would not be received if the loan were paid prematurely. "Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline." *Matter of LHD Realty Corp.*, 726 F.2d 327, 330 (7th Cir.1984). This gives credence to the argument that the prepayment penalty, if any, would be calculated at the date of prepayment, rather than on the date of acceleration. As an attempt to compensate the lender for potential loss in interest income, Fannie Mae's claim for a prepayment penalty is not allowed under 11 U.S.C. § 502(b)(2). *See also United Savings Assn. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1987). It is a longstanding principal under *Timbers* that unsecured claims are not entitled to postpetition interest. *See also Federal Deposit Insurance Corporation v. Jenson (In re Jenson)*, 980 F.2d 1254, 1259 (9th Cir.1992). Fannie Mae is undersecured and is not entitled to postpetition interest. Therefore, collection of a prepayment penalty, representing lost interest income, would violate this proposition.

 The Debtor argues that allowing the prepayment penalty would be similar to allowing claims for the difference between proceeds received by an issuer and the face amount of the debt instrument repayable by the issuer at maturity for Original Issue Discount ("OID") obligation claims. The legislative history in 11 U.S.C. § 502(b)(2) clearly points out that interest representing an original discounting of a debt is disallowed as unmatured interest. *See In re Allegheny Int'l, Inc.*, 100 B.R. 247 (Bankr.W.D.Pa. 1989); *Texas Commerce Bank v. Licht (Matter of Pengo Industries, Inc.)*, 962 F.2d 543 (5th Cir.1992), *cert. den.* — U.S. ——, 113 S.Ct. 602, 121 L.Ed.2d 538 and *The LTV Corporation v. Valley Fidelity Bank & Trust (In re Chateaugay Corp.)*, 961 F.2d 378 (2d Cir.1992). While this analogy may be somewhat strained, it effectively emphasizes the Bankruptcy Code's concern with allowing a creditor to collect unmatured interest, as Fannie Mae attempts by its claim for prepayment penalty.[3]

Citing *LHD*, the Debtor and Cardinal also argue that Fannie Mae waived its claim to prepayment penalty by accelerating the debt. Fannie Mae argues that this analysis is inapplicable. In *LHD*, the court held that the lender lost its right to a prepayment premium by electing to accelerate the debt: "This is so because acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity." *LHD*, 726 F.2d at 330. *See, also, In re Pinebrook Ltd.*, 85 B.R. 160 (M.D.Fla.1988); and *In re Duralite Truck Body & Container Corp.*, 153 B.R. 708, 715 (Bankr.Md.1993).

The Addendum here specifically states that: "Borrower shall pay the prepayment premium due under this paragraph A whether the prepayment is voluntary or involuntary (in connection with Lender's acceleration of the unpaid principal balance of the Note) ..." In reviewing the cases holding that a lender waives its right to a prepayment penalty upon acceleration of the obligation, there is no indication whether the relevant evidence of indebtedness contained a provision applying the prepayment penalty in connection with an acceleration by the lender. As such, these cases may be distinguishable. The Court need not, however, render a determination on the enforceability of the prepayment penalty based solely upon an acceleration by the lender. As stated above, the Court has found that the prepayment penalty is not enforceable for other reasons.

As an undersecured creditor, Fannie Mae is not entitled to be protected against a postpetition loss of interest income. Any claim for a prepayment penalty in this circumstance would violate that prohibition and would fly in the face of the legislative history to § 502(b)(2). The Court therefore finds that the Debtor's Objection to Fannie Mae's claim for a prepayment penalty is well taken.

### C. FANNIE MAE'S MOTION FOR RELIEF FROM STAY.

 The lateness of Fannie Mae's Amended Claim and the impact that delay

---

3. The Court also notes that O.C.G.A § 7–4–2(b)(1) requires unearned interest to be rebated

to a borrower upon acceleration of a debt.

had upon the confirmation process causes the Court to find that granting Fannie Mae the right to amend its proof of claim is expressly conditioned upon providing the Debtor sixty (60) days to amend its Plan to accommodate the increased payments required by the Amended Claim. Accordingly, Fannie Mae's Motion for Relief From Stay will be denied to allow the Debtor sufficient time to make those Plan amendments and to allow the Court to consider and rule on confirmation issues. Until that occurs, the Court denies the pending motion for relief from stay.

III. *Conclusion*

For the reasons set forth herein, it is hereby ORDERED that:

1. The Debtor and Cardinal's Objection to Fannie Mae's claim for statutory attorney fees under O.C.G.A. § 13–1–11 is OVER-RULED; and

2. The Debtor and Cardinal's Objection to Fannie Mae's claim for a prepayment penalty is SUSTAINED; and

3. Fannie Mae's Motion for Relief From Stay is DENIED.

IT IS SO ORDERED.